This is a child custody modification case.
The father petitioned the trial court to modify the parties' 1978 divorce decree, which awarded custody of the parties' two minor children to the mother. The mother counterclaimed, seeking an increase in child support.
Following an ore tenus hearing, the trial court granted the father's petition and transferred custody of the children to him. The mother appeals. We reverse and remand.
When a trial court is presented evidence ore tenus in a child custody case, its determination is afforded a presumption of correctness and will not be reversed unless the evidence so fails to support the determination that it is plainly and palpably wrong or unless an abuse of the trial court's discretion is shown. Flowers v. Flowers, 479 So.2d 1257
(Ala.Civ.App. 1985).
Under this standard of review this court does not often overturn the custody determination made by a trial court. Cf.Calabrisi v. Boone, 470 So.2d 1255 (Ala.Civ.App. 1985). After a careful study of the record in this case, however, we can only conclude that the trial court's determination to change custody is due to be reversed.
As the noncustodial parent, the father bore the burden of showing, not merely that he was fit to have custody of the children, but also that the change in custody would materially promote the children's best interest and welfare. Ex parteMcLendon, 455 So.2d 863 (Ala. 1984). Under this heavy burden of proof the husband was required to show that the "positive good brought about by the modification [would] more than offset the inherently disruptive effect caused by uprooting the child[ren]." Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976). See Calabrisi, 470 So.2d at 1258. Our review reveals that the husband did not meet this burden.
The situation of both parties has somewhat changed since their divorce. In 1981 the mother remarried but divorced her second husband in 1984. The father also remarried. He and his second wife have a one-year-old child.
In late 1984 or early 1985 the mother planned to move with the children from Anniston to Mobile. The father, however, *Page 690 
obtained a temporary injunction preventing the mother's move to Mobile. At the same time the father filed the present petition to modify custody.
The father testified that he sought a change in custody because "I felt like I had gotten myself into a much better position to look after the kids and have the kids in my household than I had been at the time the custody award was made." He contended that, while his life "was in very good order and very stable," the wife's life was unstable due to her second divorce and her plans to move with the children to Mobile.
Clearly, under the McLendon standard, it is not enough for the husband to show that his own lifestyle has improved; he must show that the change in custody would "materially promote" the children's best interest and welfare. McLendon
455 So.2d at 866. This he did not do.
The parties' children are a son, age thirteen, and a daughter, age eleven. They have resided with the mother since the parties' divorce in 1978. The children, as well as the parents, were tested and evaluated by a clinical psychologist, Dr. Richard Ince, who testified as an expert witness. Dr. Ince testified that both children are very attached to the mother and feel some resentment or ambivalence toward the father and his present wife. Neither child wanted custody to be given to the father, and the son had apparently threatened to run away if custody was changed. Dr. Ince testified that in his opinion a change in custody would not be in the best interest of the children.
To show that a change in custody would promote the interests of the children, the father contends that the mother does not adequately supervise or discipline the children. The evidence shows that, as a working parent, the mother's ability to supervise the children during the summer when they were not in school was not ideal. Most days during the summer the children were dropped off by the mother at the country club where they could swim and play tennis. Although more parental supervision during the day might have been desirable, we do not think that the evidence reflects any lack of concern or caring on the part of the mother, with whom the children had frequent telephone contact during the day.
With regard to discipline, the father appears to contend that the mother does not discipline the children sufficiently. The evidence reflects, however, merely a difference in philosophy between the parents as to the best method for disciplining the children, the father having more conservative and stricter views.
Dr. Ince testified that there was nothing abnormal about the mother's disciplining techniques. To the contrary, he stated that the children found the mother to be "particularly skilled in communicating and talking with the children and handling their problems." Both children had apparently informed Dr. Ince that they talk to the mother "a lot" and that the father's tendency was to yell at them to enforce discipline whereas the mother would talk to them. Dr. Ince testified that both children appeared to obey or want to obey the mother, rather than the father. The father, in fact, testified that he would face a tough discipline situation if he were awarded custody.
The father has simply not shown that the mother's actions or inactions or her lifestyle and method of parenting were such that taking the children from her custody and placing them with him would materially promote their interests. The evidence shows that the children are basically well adjusted. To be sure, the record reflects that they have had some problems, particularly the son. He has had disciplinary problems, including an attempt to "shoplift" at the local mall, and some problems with his grades, apparently due in part to a slight learning disability related to hyperactivity. The evidence, however, does not show that these problems are the result of any lack of care or concern on the part of the mother. Put another way, the evidence does not show that a change in custody would alleviate these or other such problems.
We note, moreover, that the mother's desire to move to Mobile has no bearing *Page 691 
in this matter. Cf. Murphy v. Murphy, 479 So.2d 1261
(Ala.Civ.App. 1985).
The testimony indicates that both parties love their children and are concerned for their well-being and development. Had this case been an appeal from an initial custody determination, this court would doubtless have found that the trial court was well within its discretion in awarding custody to the father. As the case is a modification of custody, however, we have no choice under the McLendon standard but to reverse.
The mother's contentions regarding her claim for increased child support and attorneys' fees are remanded to the trial court for any proceedings which might be necessary in view of this opinion. We take such action because it is for the trial court in the first instance to make findings as to these matters.
The husband has requested an attorney's fee for representation on appeal. That request is denied.
This case is reversed and remanded.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.