PER CURIAM.
This is a custody-modification case involving domestic violence and family violence committed by the custodial parent. The trial court divorced the parties on October 10, 1991. Pursuant to an agreement of the parties incorporated into the final judgment of divorce, the court awarded the parties joint custody of their minor son, with the father having primary physical custody and the mother having liberal visitation.
Subsequently, the mother moved to modify the divorce judgment. After a hearing, the court, on April 20, 1995, ordered the mother to pay child support and continued the joint-custody arrangement. On December 23, 1997, the mother moved the court for an emergency order granting her temporary custody of the child, who at that time was nine years old, and requesting full custody. Along with her motion, the mother submitted transcripts of taped telephone conversations between the mother and the father’s current wife in which the wife said the father had been both verbally and physically abusive toward her and the child; that the father had displayed a history of violent outbursts; that the father had been arrested for domestic violence; and that she did not want the child to remain in her home, because, she said, the child had lied and had caused marital problems between her and the father. The court awarded the mother temporary custody and allowed for an independent evaluation of the child regarding the abuse allegations.
Following an ore tenus proceeding, the court, on August 11, 1998, entered a detailed order, stating:
“1. This Court’s October 10, 1991, divorce decree awards joint custody of the parties’ minor son ... to both [the mother] and [the father]. Primary placement of the child was awarded to the father and secondary placement and extended visitation was granted to the mother. [B.C.] was the only child born of the parties’ marriage.
“2. Since the divorce decree the father moved to New Jersey with the child and the mother continued residing in Calhoun County, Alabama. This Court has, since the divorce, entered two modifications of the parties’ divorce decree concerning the child support, visitation schedules and other related matters; however, primary custody of the child has remained with the father.
“3. In December 1997, the mother petitioned this Court for full custody and placement of the child. Additionally, the mother presented to this Court an ex parte motion for immediate temporary custody of the child. With the motion, the mother presented evidence of taped telephone conversations between the mother and the father’s present wife ..., the child’s stepmother. This evidence revealed that the child was being severely abused, both mentally and physically, by the father during frequent and periodic fits of rage and temper tantrums.... This evidence further revealed that the child’s stepmother dis *1227 liked and resented the child and his mere presence in her home. These taped telephone conversations also revealed that the father has a propensity for violence not only toward the child, but the stepmother as well, and that irreparable harm would come to the child if he remained in that environment. Temporary custody of the child was thus granted to the mother pending the August 6,1998, hearing.
“4. At trial, transcripts of the taped telephone conversations between the mother and stepmother were introduced and admitted into evidence.
“5. The father testified and admitted to hitting the child with his closed fists from five to ten times during the last year the child was with the father [1997]. The father also admitted to a fit of ‘road rage’ where he inflicted damage to a woman’s vehicle with his fist after her vehicle had collided with his vehicle. He also admitted to being arrested for domestic violence upon his present wife even though she later ‘had the charges dropped.’ He further admitted to knocking a hole in a wall in his home and having loud verbal confrontations with his landlord about various matters concerning his residence. Moreover, when this court merely questioned the father about his resentment of the mother and his present wife having telephone communications, the father became visibly upset. He began yelling at this Court, pounding a box of tissues on the bench and then pounding on the bench with his fist. The father then turned and addressed the mother’s table, shaking his finger and screaming as loud as his voice would allow accusing the mother and her attorneys of destroying his life. While standing in the witness box, he then picked up the witness microphone with its pedestal attached and drew back his arm as if he would throw [it] at the mother. Upon entry of security [into] the courtroom, order was restored.
“[6.] In addition to the father’s said testimony and exhibition, the father called his present wife ... as a witness. She admitted as true some of the incidents she described to the mother in-her telephone conversations, and denied some even though she admitted that she had said those things. Notwithstanding, [she] was visibly shaken. She appeared to be afraid as she testified and this Court can well understand her emotions and fears.
“[7.] Pursuant to the father’s request, an independent evaluation by a licensed counselor was made of the child prior to the hearing. The counselor’s written report was offered by the mother and admitted into evidence. The report confirmed the inappropriate behavior by the father that this Court has observed firsthand.
“[8.] This Court is now clearly convinced that the father suffers from severe emotional problems and total lack of self-control. Therefore, the continued placement of the child with the father can and will result in irreparable physical and emotional harm to the child. This court also finds that the child’s best interests will be served by placing his custody with the mother. The benefits realized by the child with such custody transfer far outweigh any disruptive effect of moving or uprooting the child from the father’s placement.
“[9.] For this Court to consider visitation, the father will have to demonstrate to this Court that he has undergone intense counseling and therapy for anger management and his emotional problems. If the father elects to undergo counseling, he should permit free input from the mother, her representatives and the child’s counselor with the expert providing the father’s treatment. Otherwise, any report from the expert to this Court would be suspect, especially considering the progression of this case.”
*1228 The father appeals, arguing that the court applied the “best interests of the child” standard, and thereby erred, and that the court abused its discretion regarding evidence presented by the mother that, he says, he refuted during the proceeding. We find the father’s arguments without merit.
When a noncustodial parent seeks a modification of a prior custody determination, the court must apply the evidentiary standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). The McLendon standard applies when the parents share joint legal custody and a previous judicial determination places primary physical custody of the child with one parent. Scacca v. Scacca, 694 So.2d 1 (Ala.Civ.App.1997); see also Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996) (holding that the McLendon standard applied where an agreement between the parties granted the parties joint legal custody of the child, with physical custody to the mother, and the agreement had been adopted by the trial court). The petitioning parent must show by substantial evidence that a change in custody will materially promote the child’s best interests and welfare. Ex parte McLendon, supra, Etheridge v. Etheridge, 712 So.2d 1089 (Ala.Civ.App.1997). The petitioning parent must also show that the good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. The ore tenus rule is applicable to child-custody-modification proceedings, and the court’s judgment based on its findings of fact will not be reversed absent a showing that the findings are plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995).
In 1995, the Alabama Legislature passed the “Custody and Domestic or Family Violence Abuse Act,” which provides that joint custody is not appropriate in situations involving domestic or family violence. Specifically, the Act, as codified, provides, in part:
“ § 30-3-131. Determination raises re-buttable presumption that custody with perpetrator detrimental to child.
“In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.
“ § 30-3-132. Factors court must consider.
“(a) In addition to other factors that a court is required to consider in a proceeding in which the custody of a child or visitation by a parent is at issue and in which the court has made a finding of domestic or family violence the court shall consider each of the following:
“(1) The safety and well-being of the child and of the parent who is the victim of family or domestic violence. “(2) The perpetrator’s history of causing physical harm, bodily injury, assault, or causing reasonable fear of physical harm, bodily injury, or assault, to another person.
“(b) If a parent is absent or relocates because of an act of domestic or family violence by the other parent, the absence or relocation may not be a factor that weighs against the parent in determining the custody or visitation.
“ § 30-3-133. Determination raises re-buttable presumption that [it is in the child’s best interest to] reside with [the parent who is not] perpetrator.
“In every proceeding where there is at issue a dispute as to the custody of a *1229 child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is in the best interest of the child to reside with the parent who is not a perpetrator of domestic or family violence in the location of that parent’s choice, within or outside the state.
“ § 30-3-134. Finding of domestic violence constitutes change in circumstances.
“In every proceeding in which there is at issue the modification of an order for custody or visitation of a child, a finding that domestic or family violence has occurred since the last custody determination constitutes a finding of change in circumstances.
“ § 30-3-135. Visitation by parent who committed violence.
“(a) A court may award visitation by a parent who committed domestic or family violence only if the court finds that adequate provision for the safety of the child and the parent who is a victim of domestic or family violence can be made.
“(b) In a visitation order, a court may take any of the following actions:
“(1) Order an exchange of the child to occur in a protected setting.
“(2) Order visitation supervised in a manner to be determined by the court.
“(3) Order the perpetrator of domestic or family violence to attend and complete to the satisfaction of the court, a program of intervention for perpetrators or other designated counseling as a condition of visitation. “(4) Order the perpetrator of domestic or family violence to abstain from possession or consumption of alcohol or controlled substances during the visitation and for 24 hours preceding the visitation.
“(5) Order the perpetrator of domestic or family violence to pay a fee to defray the cost of supervised visitation.
“(6) Prohibit overnight visitation.
“(7) Require a bond from the perpetrator of domestic or family violence for the return and safety of the child. “(8) Impose any other condition that is deemed necessary to provide for the safety of the child, the victim of family or domestic violence, or other family or household member.
“(c) Whether or not visitation is allowed, the court may order the address of the child or the victim of family or domestic violence to be kept confidential.
“(d) The court may refer but shall not order an adult who is a victim of family or domestic violence to attend counseling relating to the victim’s status or behavior as a victim, individually or with the perpetrator of domestic or family violence as a condition of receiving custody of a child or as a condition of visitation.
“(e) If a court allows a family or household member to supervise visitation, the court shall establish conditions to be followed during visitation.”
See also Jackson v. Jackson, 709 So.2d 46 (Ala.Civ.App.1997) (award of joint custody reversed for trial court’s failure to consider allegations of domestic violence).
After thoroughly reviewing the record, we find it clear that the trial court appropriately applied the more stringent McLendon standard in weighing the potential disruption that would be caused by changing custody, and in finding that it would be in the child’s best interests to be removed from the physical and emotional abuse occurring in the father’s home. The father testified that he had hit the child and had punched him in the stomach on numerous occasions and that these instances were often the result of stress in the father’s life rather an effort to discipline the child for misdeeds. The current wife corroborated, rather than refuted, the evidence indicating that the father often had outbursts of uncontrollable anger toward her, the child, and persons outside the *1230 home. In addition, the taped telephone conversation between the wife and the mother revealed that the child had been living in an environment in which he was not welcomed by the father’s present wife and would not be protected by her from further emotional and physical abuse. Finally, we note that the counseling report admitted into evidence described the child’s fear of, and apprehension regarding, his father, and it confirmed instances of physical assaults toward the child. Given the weight of the evidence, we conclude that the court could properly determine that joint custody was not in the child’s best interests; that the child should not remain in the father’s physical custody; and that visitation should be prohibited until the father obtained professional counseling. The judgment of the trial court is affirmed.
AFFIRMED.
All the judges concur.