YATES, Judge.
On January 30, 1997, M.J.Y. (“the mother”) sued J.S.Y. (“the father”) for a divorce, alleging incompatibility of temperament and an irretrievable breakdown of the marriage. She sought custody of the parties’ two minor children, child support, and an equitable division of property. The parties agreed to a joint-custody arrangement, which was approved by the court in February 1997. On June 18, 1997, the father moved for an immediate hearing, alleging that he had physical custody of the children; that “the mother has a alcohol problem so severe that her personality changes as a result of that problem”; and that the mother could not properly care for the children. The father filed a second motion on June 24, 1998, alleging that the parties’ four-year-old child had stated that the mother’s boyfriend had inappropriately touched the child; that the mother had been naked in front of the children; that the boyfriend had punched and/or pushed one of the children in the stomach; and that a doctor “thought that the four-year-old had been abused.” The court ordered the Geneva County Department of Human Resources (DHR) to investigate the allegations of sexual misconduct; DHR determined that no sexual abuse was indicated. The mother moved the court to find the father in contempt and to order specific visitation, arguing that the court had erroneously granted the father temporary custody based on a false allegation of sexual abuse and that the father had denied the mother visitation rights.
Following an ore tenus proceeding, the court, on June 23, 1998, divorced the parties, but reserved all other issues, pending further evidence and testimony. Both parties filed subsequent contempt petitions, alleging violations of the court’s orders: the mother alleged that the father was an unfit parent, based on a previous drug conviction, and the father alleged that the mother had been neglecting the children *573 and having male visitors while the children were in her care.
Following further testimony, the court, on December 23, 1998, entered a final judgment, awarding joint custody, with the father having primary physical custody of the minor children; awarding reasonable visitation rights to the mother; and ordering the mother to pay $565.84 per month in child support. The mother appeals, arguing that when the court awarded the father primary physical custody it failed to consider the best interests of the children.
“When a trial court receives ore tenus evidence, the resulting judgment is presumed correct on appeal and will not be disturbed unless it is unsupported by the evidence and is, therefore, plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown.” Tribble v. Washington, 675 So.2d 468, 469 (Ala.Civ.App.1996). In an initial custody determination, the parties come to court on an equal footing and the appropriate standard for the court to apply in determining custody is the best interests of the child. Id. This court stated in Smith v. Smith, 727 So.2d 113 (Ala.Civ.App.1998):
“ ‘In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption enures to either parent. The trial court’s overriding consideration is the children’s best interests and welfare. The factors that enter into the court’s custody determination include the child’s age and sex and each parent’s ability to provide for the child’s educational, material, moral, and social needs. Likewise, it is proper for the court to consider the “characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.” ’ ”
Id. at 114 (citations omitted).
An exception to the “equal-footing” principle applies where domestic or family violence has occurred. This court has stated that “joint custody is not appropriate in situations involving domestic or family violence,” citing what is generally known as the “1995 Custody and Domestic or Family Violence Act.” See E.M.C. v. K.C.Y., 735 So.2d 1225 (Ala.Civ.App.1999). That Act is codified at §§ 30-3-130 to - 136, Ala.Code 1975. It states, in part:
“In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.”
§ 30-3-131. See also, Jackson v. Jackson, 709 So.2d 46 (Ala.Civ.App.1997) (this court reversed the trial court’s joint-custody order for that court’s failure to consider the evidence regarding domestic violence by the father).
The father graduated from high school and a trade school and has been employed by several automobile dealerships for the past five years. He stated that he is presently employed with the “Hubert Jackson Oldsmobile” dealership and that in that employment he earns approximately $1,000 per month. The mother has been employed with DHR for the past eight years, earning approximately $1,807 per month. In deposition and at trial, the father stated that he had served 18 months in prison based on a 1986 incident of drug possession; that his probation had been revoked for assaulting a female; that he had smoked marijuana within the past year, sometimes smoking marijuana and drinking alcohol at least three times per week; and that he had been arrested in 1986 for domestic violence and for illegal possession of a firearm. The father admitted that he had slapped the mother; and *574 he admitted that in another incident he had pushed her and that the pushing incident had led to his arrest for domestic violence. He also stated that he had had several arrests for driving under the influence (DUI) within the past few years; that his driver’s license had been revoked; and that he continues to drive without a license and does so with the children in the car.
The mother testified that she was seeking custody because the father was violent; she said: “[He] assaulted me several times, he held a gun on me, he choked me, he’s slapped me, he’s verbally abused me. He put me out of the car when I was on the way to the hospital to have my daughter.” The mother further stated that the father had pushed her into the bathroom wall, had thrown tea in her face while she was asleep, and that at her place of employment he had grabbed her and threatened to kill her. She had previously filed for a protection-from-abuse order and had sought assistance from a facility known as the “House of Ruth,” a shelter for abused women. The mother stated that the children were usually present during the incidents of domestic violence. A teacher at an elementary school one of the children attended testified that the child had confided in her that “his dad pointed a gun at his mama.” Several witnesses testified that on at least one occasion when the father had been drinking the police .had to come and remove him from the mother’s residence. Two of the mother’s coworkers stated that they had seen bruises on the mother and that the father had telephoned the mother’s workplace repeatedly to harass her. Further, a worker at a daycare center that cared for one of the children testified that on one occasion the father had become disruptive at the daycare center and that the police had to be called.
Both parents presented character witnesses, primarily church members and neighbors, who testified that both parents appeared to love their children and to care for them. DHR provided testimony indicating that several complaints had been made against both parents and that its investigation showed no abuse or neglect by either parent. In one instance, a seven-year-old neighbor was found to have performed sexual acts with at least one of the children, while in the mother’s residence; however, DHR determined that there had been no neglect by the mother in this situation.
We are unable to determine from the record whether the court properly considered the allegations of domestic violence committed by the father. We, therefore, reverse the judgment and remand the case for the trial court to determine whether the father rebutted the presumptions established by §§ 30-3-131 and 30-3-133 and to consider the factors set forth in §§ 30-3-132 and 30-3-135.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., concurs specially.
ROBERTSON, P.J., concurs in the result.