YATES, Judge.
Following an ore tenus proceeding, the trial court divorced the parties, awarding custody of the parties’ minor child to the husband, with supervised visitation to the wife. Further, the court awarded the wife $250 per month in periodic alimony for a period of one year and -ordered that the wife did not have to pay child support, because of her mental and physical disabilities. The wife appeals, arguing that the court abused its discretion in awarding the husband sole custody; in restricting her visitation with the child to six hours per month; and in failing to award her: an equitable division of the marital estate; a percentage of the husband’s military retirement income; an adequate amount of periodic alimony; and an attorney fee.
In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court’s judgment based on those findings .will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App.1993). This presumption of correctness is based on the trial court’s unique position to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Additionally, matters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995). Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; their station in life; the marital properties and their sources, values and types; and the conduct of the parties in relation to the marriage. Id., at 1067. . Further, a division of marital property in á divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Id. Additionally, an attorney’s fee may be allowed in divorce cases, in the discretion of the trial court. Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App.1986).
The parties married in Korea on April 15, 1991, while the husband was in the United States Army. The wife, a Korean, moved to the United States with the husband about three months after the marriage. The parties have one child, born in the United States on October 3, 1993. The husband was discharged from the army after serving' for over 23 years; he sustained a severe head injury while on duty in 1993 and retired with military disability benefits. He is currently employed as a correctional officer with the Tallapoosa County sheriffs office, earning approximately $2,400 to $2,500 per month. The husband receives an additional $1,198 in military retirement and $450 in veteran’s disability benefits per month.
We note that the wife does not speak English and that an interpreter was used throughout the proceeding. The wife stated that she had completed high school in Korea; however, the husband testified that the wife has a limited understanding of the English language; that she cannot drive a motor vehicle; that she does not understand United States currency; that she has not worked while in the United States; and that she has been totally dependent upon him for her financial support, other than a few contributions she received from her family in Korea.
The wife was diagnosed with a drug-resistent form of tuberculosis around 1993. She had to travel to Denver, Colorado, to have a lobectomy performed, and she was *1199 prescribed several medications to treat her tuberculosis. After she returned home, she did not continue taking her prescribed medications. The state health officer, acting through the state attorney general’s office, petitioned the probate court, pursuant to the “Notifiable Diseases Act,” § 22-11A-1 et seq., Ala.Code 1975, to have the wife committed for treatment, arguing that her failure to submit to the prescribed course of treatment would likely result in substantial harm to herself and would also pose an immediate and present threat to the public. The wife was subsequently placed in Tutwiler Prison in 1997 for treatment of her medical condition. The record indicates that while the wife was in Tutwiler Prison she was diagnosed with mental illness, and it indicates that she was transferred to Bryce Hospital for psychiatric care. She stated that she had not had a history of mental illness before her marriage, and she denied that she had been hospitalized for mental illness in 1992 during a trip to Korea to visit her family. The wife further denied, that upon her release from Bryce Hospital in November 1998 she had gone to live with a particular man whom she had met while at Bryce. A parent of that man testified that the wife had resided in the parent’s home and that the wife and the man did not have a romantic relationship; the man maintained a separate residence from his parents. The wife stated that she has been cured of her tuberculosis and that she no longer takes medication for her mental illness. She stated that, although she had been too ill to take English classes, she wants to learn English; that she wants to gain employment as a babysitter or as a waitress; and that she wants to care for her child.
The husband stated that he had noticed erratic behavior by the wife around 1992 when he returned home to find her throwing their furniture and personal belongings into the backyard while it was raining. He stated that the wife became increasingly violent by physically assaulting him and that he had had the wife hospitalized at Ft. Benning, where she was diagnosed with mental illness; the wife spent two weeks in the psychiatric ward and was prescribed medication. The husband stated that her condition improved for about one year; however, the wife stopped taking her medication.
The wife testified that the husband had been violent, stating that he had threatened her with a gun in front of their child; that he had tied her and choked her with a military rope; and that he had banged her head against the wall. She denied that she had attacked the husband or had been violent during the marriage. She presented testimony of a police officer who had been called to the Athey house in 1992. He referred to his incident report, which indicated that the wife had had rope burns on her wrists; that she was outside the house with no shoes on; and that she had stated she was afraid of her husband. The report also indicated that the husband had been asleep-when the officer arrived and that the wife had appeared to be intoxicated.
Both parties testified that they had been the primary caregiver for their minor child. The husband presented numerous character witnesses who described the father as a loving and caring parent. The husband. stated, as did his parents, that they had cared for the minor child throughout the mother’s ñlnesses and that the child had been in the father’s physical custody since the parties separated in October 1997. The father stated that he did not want the mother to have custody, because, he said, she had placed the child in bath water that was too hot and had hit the child too hard. The mother stated that when she was in the home she had cared for the child and had never injured the child.
The husband purchased the marital residence in 1986 for approximately $51,000. He stated that he became frustrated after losing his job and the wife’s commitment to prison, and that he had allowed the house to be lost in a mortgage foreclosure *1200 in 1998. He admitted that he had received during the marriage approximately $1,100 from the wife’s mother for renovations to the house and that he had received approximately $7,900 as reimbursement from his health insurance company based on the wife’s hospitalization in Korea;[1] the husband stated that he had used this money for living expenses, including several trips he made to Colorado, where the wife’s surgery was performed, and to buy appliances for the home. The husband stated that he had closed the parties’ joint bank account and had transferred all the funds into his personal account.
At the close of the proceeding, the court stated:
“This is an unusual situation at best. Neither side will be satisfied with the judgment that I’m about to enter.
“The care, custody and control of the minor child is hereby vested with the [husband].
“The [wife] will be granted visitation once per month under supervision at the Department of Human Resources in Tuscaloosa County. The [husband] will provide transportation to the same.
“There are many different issues of property settlement. There have been claims for interest in a marital residence that has now been foreclosed. With the exception of the items I’m about-to enter, the [personal] property of each party is hereby vested in the party holding the same. Whoever has possession of the property, will be allowed to hold it and hold title.
“The [wife] will be allowed possession of one china cabinet, oriental small table with mirror and chair, pictures painted by her sister and in possession of the [husband], and .with a collection of porcelain birds in possession of the [husband].
“For both parties, I want you to understand and, Mr. Athey, in this situation, I’m not going to order her to pay child support.
[[Image here]]
“And, I want you to understand that she is a noncitizen/alien with mental problems and with bad medical conditions, who is here in this country, and, although, of course, she was very willing to come to this country, you brought her here. I’m going to order alimony in the amount of two hundred fifty dollars per month, but this is not a continuing obligation. This will be terminated after a period of twelve months.
“Now, for her, I want her to understand that this is to try to help her either find a place in this society or if she chooses to try to go home.”
We note that a property division need not be equal; however, it must be equitable. See Ragan v. Ragan, 655 So.2d 1016 (Ala.Civ.App.1995). This court has consistently held that “the purpose of alimony is to preserve, as far as practical, the economic status quo the parties, enjoyed during the marriage.” Pickett v. Pickett, 728 So.2d 71, 74 (Ala.Civ.App.1998). After thoroughly reviewing the record, we conclude that the trial court abused its discretion in awarding the wife only $250 per month as periodic alimony for a 12-month period. It is clear from the evidence that the husband’s monthly income exceeds $4,000 per month and that the wife has been financially dependent on him for her support throughout the marriage; therefore, it is unlikely that the wife can maintain an adequate lifestyle on $250 per month or that she can become self-sufficient within one year. Based on the wife’s past mental and physical disabilities, her limited command of the English language, and the great disparity in earning potential between the parties, a more judicious approach requires an award of periodic *1201 alimony sufficient to meet the needs of the wife. Accordingly, the judgment, as it relates to the periodic alimony, is reversed and the case is remanded for the trial court to enter on order consistent with this opinion. Additionally, on remand, the court is to consider the question of continued health insurance coverage for the wife.
As to the wife’s argument regarding the award of custody and visitation, we conclude that the court did not abuse its discretion in awarding the husband sole custody of the child. E.M.C. v. K.C.Y., 735 So.2d 1225 (Ala.Civ.App.1999). However, we do find that the court excessively restricted the wife’s contact with the child.
The primary consideration in setting visitation rights is the best interests of the child. See DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998). Although there was substantial testimony regarding the wife’s mental condition, there was no evidence indicating that she is a danger to the child or that it is in the best interests of the child to be denied contact with her. Further, the record contains the initial settlement agreement prepared by the husband and signed by both parties, wherein the wife was provided reasonable visitation that included the first and third weekend of each month, as well as holidays. The judgment, as it relates to the issue of visitation, is reversed; on remand, the court is to enter a visitation order consistent with this opinion.
An award of an attorney fee is within the discretion of the trial court, and that court’s ruling in regard to an attorney fee will not be reversed absent an abuse of discretion. “Factors to be considered in making an attorney fee award in a divorce case include the earning capacity of the parties, the results of the litigation, and the financial circumstances of the parties.” Brasfield v. Brasfield, 679 So.2d 1091, 1095 (Ala.Civ.App.1996). It is clear that the wife lacks the financial resources to pay her attorney, who was appointed by the court to serve as her guardian ad litem. The judgment, as it relates to an attorney-fee award, is reversed. On remand, the court is to enter an attorney-fee order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MONROE and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.
CRAWLEY, J., concurs in part and dissents in part.

. There was testimony that the wife's mother had paid the medical bills for that hospitalization in Korea.