YATES, Presiding Judge.
This is a child-custody-modification case.
The parties were divorced in November 1992 in Los Angeles, California. The judgment of divorce awarded the parties joint legal custody of their three minor children, with primary physical custody to the mother; the father was ordered to pay *17 $340 per month in child support. In June 1996, the mother petitioned for a modification, requesting that the court accept an agreement between the parties that the children would relocate to Alabama to reside with their father and that she would pay $340 per month in child support; the court granted the mother’s petition and entered an order modifying its judgment as to custody and child support. In April 1999, the father filed a complaint in the Circuit Court of Jefferson County, Alabama, alleging that the mother, in February 1999, had filed in California a petition to modify custody, requesting that the children be returned to her physical custody. The father requested that the case pending in California be transferred to Alabama and that the Alabama court set specific rights of visitation because, he alleged, the mother had kept the children beyond the agreed-upon time while they were visiting her in California. Pursuant to a telephone conference between the California and Alabama courts, the case was transferred and jurisdiction was vested in Alabama as the home state of the children. In June 1999, the father amended his complaint to seek an increase in child support. In October 1999, the mother counterpeti-tioned for a modification, seeking physical custody of the three children.
After a two-day ore tenus proceeding, the court, on June 27, 2000, entered an order, stating, in part:
“1. That the [father] shall maintain his guns and ammunition in a secure, locked location or, failing that, shall remove the guns and ammunition from the residence during any period of time the children are present.
“2. That it is inappropriate for either party to prohibit or unreasonably limit the children’s telephonic, E-mail, or other electronic communication with the other parent and both parents shall have the right to communication access not less than as set out below. Further, the [father] shall neither tape nor electronically intercept his children’s telephone conversations with the [mother].
“4. The [mother] shall pay to the [father] the sum of [$1,030.00] per month for the support and maintenance of the children. Said payments shall begin on 1 July 2000, and continue on a monthly basis thereafter.
“5. That the [Form] CS-42 filed herein is hereby adopted and incorporated and made a part of this Order.
“7. That the [father] shall attend and complete the parenting classes offered through GATEWAY FAMILY COUNSELING....
“9. That the [father] shall immediately make arrangements to enroll and provide [the child, E.H.] with a qualified mental health professional, therapist or counselor, continuing with [E.H.] in such counseling so long as deemed appropriate or necessary by the counselor. The [father] shall provide the [mother] with the name, telephone number, and address of the counselor and shall execute such consent and waiver as is required to permit or allow the [mother] to have access to the counselor and any records or information concerning the counseling.
“13. That the [mother’s] Petition to Modify Custody is Denied, the [mother] having failed to establish a material change of circumstances or otherwise meeting the McLendon [Ex parte McLendon, 455 So.2d 863 (Ala.1984)] standard. The Court further notes that the [mother] previously had custody and voluntarily surrendered custody to [the *18 father]. The [mother] says the [father] is a domestic abuser. The [father] says the [mother] is an alcoholic lesbian. There can be no surprise that these children have serious issues in their lives. In fact, it is probably remarkable that the children have done as well as they have.
“While not approving of the [father’s] occasional excessive disciplinary measures or condoning the [mother’s] lifestyle, this Court cannot rewrite the lives of the parties or [the] children. It can only rule based upon application of the law to the facts in evidence and attempt such remedial measures as may seem appropriate.”
In response to the father’s postjudgment motion, the court entered an amended order, stating, in part:
“1. That the [father’s] motion is Denied except the Court extends its Order of 27 June 2000, to state that this Court’s Order was entered in view of Fesmire v. Fesmire, 738 So.2d 1284 (Ala.Civ.App.1999). While allegations were made, the Court does not find that ‘domestic abuse occurred.’ What the Court did find was that the [father] used ‘occasional excessive disciplinary measures.’ Further, even a cursory reading of the Order reveals efforts by the Court to address the actual problems which exist. In the words of Fesmire, ‘scrupulous care’ was given to protect the children herein.”
The mother appeals, arguing that the court abused its discretion in failing to apply the “Family Abuse Act” as it pertains to the McLendon standard and in “not deviating sufficiently from the Child Support Guidelines” because, she says, she is solely responsible for providing round-trip transportation between California and Alabama for the children.
As it pertains to a custody modification, this court has stated:
“When a noncustodial parent seeks a modification of a prior custody determination, the evidentiary standards set forth in Ex parte McLendon, 455 So.2d 868 (Ala.1984), must be applied. The McLendon standard applies when the parents share joint legal custody and a previous judicial determination places primary physical custody of the child with one parent. Scacca v. Scacca, 694 So.2d 1 (Ala.Civ.App.1997); see also Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996) (holding that McLendon standard applied where agreement between the parties granted the parties joint legal custody of the child, with physical custody to the mother, and agreement was adopted by the trial court). The petitioning parent must show by substantial evidence that a change in custody will materially promote the child’s best interests and welfare. Ex parte McLendon, supra, Etheridge v. Etheridge, 712 So.2d 1089 (Ala.Civ.App.1997). The petitioning parent must also show that the good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. The ore tenus rule is applicable to ehild-eustody-modification proceedings, and the court’s judgment based on findings of fact will not be reversed absent a showing that the findings are plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995).”
P.A.T. v. K.T.G., 749 So.2d 454, 456 (Ala.Civ.App.1999).
The father testified that he relocated to Alabama in 1991 and that he did not pay the court-ordered judgment or child support to the mother before relocating; that he remarried in 1994; and that he had resided in his current three-bedroom *19 house for about five years. He stated that the children moved into his residence in 1996, after the mother had begun living with her homosexual partner in 1995. The father admitted that he had used physical punishment to discipline the children by slapping the children in the face and whipping them with a belt and a hanger. He stated that an employee of the Department of Human Resources (“DHR”) had visited his home on two occasions to follow up a complaint by one of the children and the mother in 1999; however, there had been no further contact by DHR. He stated that on one occasion he had made the boys sit in the yard with paper bags over their heads for 83 minutes as punishment for being late to meet him at the specified time while they were at the shopping mall. He also stated that as a form of discipline he had required one of the children to ask his permission to remove food from the refrigerator and to use any electrical appliance. He admitted kicking the daughter’s “boom box” across the room because she would not turn down the volume; to intercepting the children’s mail and e-mail transmissions to their mother; and to taping telephone calls between the children and their mother. He also stated that he had often referred to the mother as a “lying alcoholic lesbian” and that the mother was not welcome in his home. He stated that although the children were receiving failing grades, he would not allow them to attend summer school because of the cost and he admitted that although he had been informed that his daughter was sexually active, he did not obtain a gynecological examination nor counseling for the daughter. He admitted that he had left the daughter and other children unsupervised to play pool on a regular basis because he played in a “pool league.”
The children were 16, 15, and 13 years old at the time of the hearing. The oldest child was at camp at the time of the hearing and did not testify. The children testified that the father used crude terms to refer to the mother and the children. The words they say he used we consider to be reprehensible, vulgar, and degrading. No child in his or her everyday life should have to hear such language from a parent. The 15-year-old child testified that he desired to reside with his mother. He stated that when he expressed a desire to live with the mother the father had used numerous derogatory terms to describe the mother, such as “dyke,” “abnormal,” and “fudgepacker.” He further stated that he did not think that he and his father could relate to each other and that he had a better relationship with his mother. He described instances in which the father had either physically hit him or had denied him the use of the bathroom, electricity, and the refrigerator, as a form of punishment. He recalled one instance in which his father hit him in the nose, causing it to bleed, and he said the father had removed from the mailbox a letter he had written to the mother to describe the incident. When questioned about a poem he had written and had shared with his mother, a poem that described several violent acts against the father and the stepmother, he stated, “I would want to but I would never do it.” He stated that the father kept guns throughout the house and that the children had access to them.
The youngest child also testified that the father calls the mother “mean names” such as “liar,” “dyke,” and “fudgepacker”; that he had heard his father slap his sister and saw his father hit his brother in the face; that he had whipped all of them; and had called them “f* ***** little a* ****** „ He further stated that he had a bad relationship with the father and the stepmother. He stated that he had stopped playing sports because his father had “hinted that it was wasting his *20 time — that he didn’t want to come to the games.” He stated that he disliked his stepmother because she had “taken over” the computer given to them by their maternal grandmother and that the stepmother had deleted all of their games. He also said that it was easier to talk to the mother because she would not ridicule him, whereas, he .said, the father might hit him.
The mother testified that she had been employed with Universal Studios for the past 15 years; that she earned approximately $3,708 per month, although her income for 1999 was $54,183, including overtime pay. She stated that she currently resided in the same house that the children had grown up in, and she described the community-service projects, church activities, and extracurricular school activities she and the children had shared. She stated that she had had a 15-year struggle with alcohol and had been a recovering alcoholic since 1995; that she had resided with her female companion since December 1995; and that she and the companion had entered into an agreement as domestic partners under the “domestic partnership act [Declaration of Domestic Partnership, State of California, Family Code Section 298]” in April 2000. When questioned about her reasons for seeking custody, she stated that if the children lived with her, they would live in a “nonsmoking, nondrinking, nonviolent household” and that the material change in circumstances since 1996 were the children’s poor grades, lack of extracurricular activities, lack of religious training, and living in an environment with family violence. When questioned whether she would consider stopping her relationship with her companion in order to regain custody, she stated “We had talked about this. And it would be really difficult because she is a part of our family. But my kids are num-' ber one and their safety and well-being are first and foremost. And so yes, that would be an option.”
After thoroughly reviewing the record, we conclude that the mother presented substantial evidence indicating that a change in custody would materially pro! mote the children’s best interests and welfare. Although the mother was an admitted alcoholic, the father did not seek custody of the children when the parties divorced. She has maintained stable employment with the same company for the past 15 years, and her undisputed testimony was that she has been sober since 1995 and was actively involved in the children’s extracurricular activities and had involved them in community-service projects. No evidence indicated that the mother’s homosexual relationship, which is accepted under California law through the “Domestic Partnership Act,” would have a detrimental effect on the well-being of the children.
In contrast, the father’s verbal, emotional, and physical abuse can be considered family violence, and that abuse constitutes a change of circumstances. See E.M.C. v. K.C.Y, 735 So.2d 1225 (Ala.Civ.App.1999); § 30-3-131, Ala.Code 1975 (“Custody and Domestic or Family Violence Abuse Act”). In addition, the age, desire of the children, and interpersonal relationship between each child and each parent, although not controlling, are important factors for the court to consider in making a custody determination. M.J.Y. v. J.S.Y., 758 So.2d 571 (Ala.Civ.App.1999). We, therefore, must reverse the order awarding physical custody to the father and remand the case for the trial court to enter an order consistent with this opinion. This court is keenly aware of the presumption of correctness that attaches to a trial court’s judgment that is based on ore ten-us evidence. However, when the evidence *21 contained in the record does not support the judgment, we have no alternative; we must reverse. Because of our ruling, we pretermit any discussion of the court’s child-support award.
The father’s motion for damages pursuant to Rule 38, Ala. R.App. P., is denied. The mother’s request for an attorney fee on appeal is granted in the amount of $1,000; the father’s request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
PITTMAN, J., concurs.
CRAWLEY and THOMPSON, JJ., concur in the result.
MURDOCK, J., dissents.