HOUSTON, Justice.
This Court granted the petition for cer-tiorari review filed by H.H. (hereinafter “the father”) in this child-custody case in order to determine whether the Court of Civil Appeals improperly reweighed the evidence when it reversed the trial court’s order denying the motion to modify custody filed by D.H. (hereinafter “the mother”). We conclude that it did err, and we reverse and remand.
The mother and father, who both lived in Los Angeles, California, were divorced in November 1992. They were awarded joint legal custody of their three minor children, with the mother receiving primary physical custody. In 1996, after the mother had begun a homosexual relationship, she petitioned a California court for a custody modification, asking that the father, who had since moved to Alabama, be awarded physical custody of the children. The California court granted the mother’s petition, and the children moved to Alabama. In February 1999, however, the mother filed in a California court another petition to modify custody, this time requesting that physical custody of the children be returned to her. In April 1999, the father filed a complaint in the Circuit Court of Jefferson County, Alabama, requesting that the case be transferred to Alabama. The Jefferson Circuit Court granted the relief requested. The case *23 was transferred and jurisdiction was vested in Alabama, the current home state of all three children.
The trial court held a two-day hearing in June 2000 at which evidence was presented ore tenus. The children were 13, 15, and 16 years old at the time of the hearing. The 13-year-old, A.H., and the 15-year-old, E.H., testified before the trial court; the oldest child, the only daughter (hereinafter referred to as “the daughter” because her initials are, like the father’s, “H.H.”), did not attend the hearing because she was attending camp.
At the hearing, the mother argued that the father was abusive toward the children. Specifically, she alleged that the father had slapped E.H., causing his nose to bleed. She also alleged that the father at one time had slapped the daughter, and that he at times had whipped the children with a belt. She further alleged that he had once kicked the daughter’s “boom box” across the room because the daughter would not turn down the volume.
The father disputed this testimony. Although he admits to slapping E.H., he claims he was punishing E.H. for hitting the daughter. He testified that he then had a discussion with E.H., for some 5 to 10 minutes afterwards, about why it was wrong to hit people. The father also claims that his son’s nose did not bleed as a result of the slap. Both the mother and the father testified that after the mother learned of this incident with E.H., she emailed the father, calling him “a great dad.” Some 15 months later, however, after this litigation began, she reported the incident to the Department of Human Resources (“DHR”).
The father further testified that he slapped the daughter after she said, “I swear on the holy f* * * * *g bible,” and that most of the whippings with the belt occurred before the divorce. The father also claims that, although he did kick the daughter’s boom box, he did not kick it “across the room.” The father testified at the hearing that he used many different disciplinary measures, including “timeouts,” requiring permission before using appliances, and having the sons sit with paper, bags on their heads (without restricting their air). DHR did visit the home, but the agency took no action.
The mother also alleged at the hearing that the children’s grades have fallen since they started living with their father and that, although their grades were poor, the father refused to send the children to summer school. The father testified, however, that his threat that he would not send the children to summer school was made to motivate them, so that they would not depend on summer school as a “parachute” for having done poorly during the school year. He did testify that the daughter did attend summer school. Furthermore, the record indicates that A.H. and 'the daughter had had bad grades while they lived in California and that all the children’s grades fell after the mother started her homosexual relationship.
The mother also argued that the father was denying the children the ability to contact her by tape-recording their telephone calls to the mother and preventing them from using E-mail to contact her. The father testified, however, that he tape-recorded the telephone calls because the children acted suspiciously and secretive after they returned from a visit with their mother. Furthermore, he said he disabled the E-mail function of the children’s computer for a period of time because the daughter had given her address to a man on the Internet.
The mother further testified at the hearing that the daughter was sexually active and that the father has failed to take her *24 to a gynecologist. In his brief to this Court, the father indicates that he was told that the daughter was sexually active by a teacher who had overheard a conversation about the daughter. The father testified, however, that the daughter denies that she is sexually active.
E.H. also testified at the hearing. He indicated that he did not like his father because he was too strict and that he would rather live in California with his mother, who was less strict. A.H., the youngest child, testified that he did not like his stepmother because she had “taken over” his computer.
On June 27, 2000, the trial court entered an order denying the mother’s request for a modification of custody. The trial court found that the mother had failed to prove a material change in circumstances or otherwise to meet the requirements of Ex parte McLendon, 455 So.2d 863, 865 (Ala.1984) (holding that a party seeking a custody modification must show that the change in custody will materially promote the child’s best interests, and that the benefits of the change will offset the disruptive effect caused by uprooting the child).
The trial court also found:
“[T]hat the [mother] previously had custody and voluntarily surrendered custody to [the father]. The [mother] says the [father] is a domestic abuser. The [father] says the [mother] is an alcoholic lesbian. There can be no surprise that these children have serious issues in their lives. In fact, it is probably remarkable that the children have done as well as they have.
“While not approving of the [father’s] occasional excessive disciplinary measures or condoning the [mother’s] lifestyle, this Court cannot rewrite the lives of the parties or [the] children. It can only rule based upon apphcation of the law to the facts in evidence and attempt such remedial measures as may seem appropriate.”
Furthermore, in response to the father’s postjudgment motion for clarification of the court’s order, the trial court stated:
“[T]he Court does not find that ‘domestic abuse occurred.’ What the Court did find was that the [father] used ‘occasional excessive disciplinary measures.’ Further, even a cursory reading of the Order reveals efforts by the Court to address the actual problems which exist ... [;] ‘scrupulous care’ was given to protect the children herein.”
The trial court ordered that neither parent interfere with the children’s telephone, Email, or other communications; that the father attend parenting classes; and that E.H. be enrolled in counseling. The mother appealed the trial court’s decision to the Court of Civil Appeals.
The Court of Civil Appeals reversed the judgment of the trial court, holding that the mother had presented substantial evidence indicating that a change in custody would materially promote the children’s best interest and welfare. The court further stated: “[T]he father’s verbal, emotional, and physical abuse can be considered family violence, and that abuse constitutes a change of circumstances.” D.H. v. H.H., 830 So.2d 16, 20 (Ala.Civ.App.2001). Specifically, the Court of Appeals indicated that the father’s disciplinary actions, including the two slapping incidents and the whippings, amounted to physical abuse. The Court of Civil Appeals also gave great weight to the arguments the mother presented at the hearing: that the father abused the children, that he did not allow the children to attend summer school in spite of their poor grades, that he intercepted the children’s mail and their E-mail, and that the chil *25 dren could better relate to the mother. The Court of Civil Appeals also held that the mother could provide a better home because she was now sober, she had been active in the children’s extracurricular programs when they lived with her, and there was no evidence indicating her homosexual relationship would have a detrimental effect on the well-being of the children. The father sought certiorari review of the Court of Civil Appeals’ decision.
The standard of review in child-custody cases in which evidence is presented ore tenus is well established:
“When evidence in a child custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993), set out the well-established rule:
“ ‘ “Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala.Civ.App.1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App.1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App.1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App.1985).”’
“It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. See the cases collected at 3 Ala. Digest 2d Appeal & Error § 846(5) (1993).
“Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court’s perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ,..,. and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.”
Ex parte Bryowsky, 676 So.2d 1322, 1324-26 (Ala.1996).
We hold that the Court of Civil Appeals impermissibly reweighed the evidence in this case. Although there was some testimony, standing alone, that might suggest abuse, this evidence was disputed at trial. The trial judge, who was in a better position to evaluate the credibility of the testimony and who observed the demeanor of the witnesses, found that, although the father’s disciplinary actions may occasionally be excessive, no abuse had occurred. The trial court further found that the mother had failed to meet her burden in proving that a modification of custody was required. The trial court’s findings are presumed correct. Bryowsky, supra, 676 So.2d at 1324. The Court of
*26 Civil Appeals, however, adopted the mother’s arguments without acknowledging the existence of contradictory testimony that supported the trial court’s holding. In doing so, that court impermissibly reweighed the evidence. We disagree with the Court of Civil Appeals’ holding that the trial court’s judgment was unsupported by the evidence; the record contains testimony and evidence that supports the trial court’s determination, and we cannot say that the trial court’s findings are plainly and palpably wrong.
The judgment of the Court of Civil Appeals is reversed and the case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs specially.