YATES, Presiding Judge.
Forrest Jay Lord (“the father”) and Wendy Kaye Lord (“the mother”) married on April 26, 1990. The parties had two children, one born in October 1989 and the other born in July 1993. In August 1997, the father sued the mother for a divorce, alleging that she had abandoned the family when she failed to return to the parties’ home following a trip to Maine in July 1997. The father alleged, in an affidavit filed along with the divorce petition, that the mother did, in fact, return on one occasion wherein she attempted, in the middle of the night, to forcibly remove the children from the marital home. The father requested that he be awarded custody of the children; that the court require the mother to pay child support; and that the court equitably divide the parties’ property. On August 20, 1997, the father was awarded temporary custody of the parties’ children. On November 14, 1997, the mother, acting pro se, answered and counterclaimed, denying that she had attempted to remove the children from the marital home and requesting that she be awarded physical custody of the children. The mother alleged that she had returned to Alabama on six occasions “to resolve [the parties’] problems and have the family back together for the children’s sake.”
The mother failed to appear for a hearing on November 26, 1997.’ On May 20, 1998, the trial court entered a default judgment divorcing the parties and awarding the father the marital home. The mother was ordered to pay $326 per month in child support, and she was awarded no visitation with the parties’ children. Oh July 16, 1998, the mother filed an appeal with this court. Because her brief failed to comply with the Rule 28, Ala. R. App P., this court was precluded from considering the merits of her appeal and affirmed the trial court’s judgment, without an opinion. Lord v. Lord (No. 2971203, Jan. 8, 1999), 776 So.2d 221 (Ala.Civ.App.1999) (table).
On September 9, 2002, the mother petitioned for custody, alleging that the father was “often” intoxicated and that hé smoked marijuana in front of the children. She also contended that the father both physically and mentally abused the children. On October 16, 2002, the father answered, denying the mother’s allegations. He also filed a counterclaim, contending that he was the proper parent to have custody of the parties’ children; requesting that the trial court calculate and order the mother to pay her child-support arrearage; and requesting that the mother be ordered to pay attorney fees. On December 11, 2002, the father filed a contempt motion and requested a hearing. Hé averred that the mother should be held in contempt for ’failing to pay the court-ordered child support and her portion of the children’s medical expenses not covered by insurance.
On January 2, 2003, following an ore tenus proceeding, the trial court held the mother in contempt for failure to pay $16,952 in child support. On May 2, 2003, at the close of an ore tenus proceeding, the trial court rendered its decision to transfer custody from the father to the mother; that decision is the basis of the father’s appeal to this court. On May 30, 2003, the father filed a “motion to reconsider” or, in the alternative, for a new trial, contending that the evidence was insufficient under Ex parte McLendon, 455 So.2d 863 (Ala.1984), to justify a change in custody. The father further requested that the court appoint a guardian ad litem to represent the children. On June 11, 2003, the trial court denied the father’s motion for a new trial. The father also filed on May 30, 2003, a motion to stay the trial’s court order transferring custody, and on June *900 25, 2003, the father requested an emergency hearing regarding his motion to stay. On July 10, 2003, the trial court denied the father’s motion to alter, amend, or vacate.
The mother, on August 13, 2003, filed a complaint for protection from abuse in a district court in Maine. On August 22, 2003, the father filed an instanter motion for contempt in the trial court, contending that since the transfer of custody the mother had failed to return the children to Alabama for his court-ordered visitation. He alleged in his motion for contempt that the mother’s abuse complaint filed in Maine was a “fraud” and that it was an attempt on her part to prevent his court-ordered visitation. On September 8, 2003, the mother answered the father’s August 22, 2003, motion for contempt alleging that the father had threatened in a telephone conversation to harm the children when they returned to Alabama. The mother contended that she had refused to allow the father visitation in order to protect the children. Also, on September 8, 2003, the mother filed a motion to temporarily suspend the father’s visitation.
On August 11, 2003, the father appealed to this court from the trial court’s order transferring custody to the mother. The father contends that the mother failed to meet the burden of proof set forth in Ex parte McLendon, supra. Specifically, he contends that, at best, the mother’s testimony revealed only that she might be able to provide the same type of home environment that he had provided over the last six years for the parties’ children. Furthermore, the father contends that most of the testimony concerning his actions were “rooted in the past” and that there was little evidence concerning the mother’s living arrangements.
In a child-custody-modification case where a noncustodial parent seeks to modify a judgment granting custody to the other parent, the noncustodial parent must show that a change in custody will materially promote the child’s best interest and welfare. Ex parte McLendon, supra. The noncustodial parent must also prove that the positive good brought about by the proposed change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Butts v. Startley, 600 So.2d 310 (Ala.Civ.App.1992). A trial court’s decision in a child-custody proceeding is presumed correct; however, that decision may be reversed on appeal if it amounts to an abuse of discretion' or is unsupported by the evidence so as to be plainly and palpably wrong. E.M.C. v. K.C.Y., 735 So.2d 1225 (Ala.Civ.App.1999).
A police officer testified that the father had been arrested in 2002 on three different occasions for driving under the influence of alcohol and that two of those arrests had resulted in convictions. The officer stated that the children were not with the father at the time, of the arrests and that no evidence of drug possession was found during the arrests.
Another police officer testified that in December 2001 she spoke with the parties’ older child concerning an allegation of abuse. The officer stated that the child stated that the father had stabbed her arm with a fork after accusing her of “smacking” her food while eating. The officer testified that the child reported to her that the father drinks excessively, smokes marijuana, and is verbally abusive. The officer stated that she reported her findings to the Alabama Department of Human Resources (“DHR”) and that DHR investigated the incident, but she was not aware of the results of that investigation.
The father testified that since the parties’ divorce in 1998 he has had custody of the children, who, at the time of the fa *901 ther’s testimony, were ages 13 and 9. He testified that he drinks on occasion and that within a 7-day period he consumes between 12 and 18 beers. He admitted that his driver’s license was currently suspended and that he had driven on occasion with a suspended license. The father also stated that as a condition of his driving-under-the-influence convictions he attends Alcoholic Anonymous meetings, that he does not drink and drive, and that he has “slacked back” on the amount of alcohol he drinks. He testified that he had not used marijuana in approximately two years. He admitted that his children had seen him smoke marijuana on approximately 10 to 15 occasions, and he admitted to one occasion of drinking and driving with the children in the car.
The father stated that he was currently employed at a sod farm earning approximately $9 an'hour. - He testified that he owns a mobile home and five acres of land. He stated that in' August 1999 ' he purchased a new mobile home, but he denied that DHR had condemned his previously owned mobile home. The father testified that his family support system consists of his three sisters and the children’s paternal grandmother, who lives in a house in front of his mobile home, and that the children stay with their grandmother approximately two to three nights per month. The father stated that at the time of the hearing in this matter, the parties’ older child was in the seventh grade, that the younger child was in the fourth grade, and that they both had made As and Bs on their report cards over the last school year. He stated that both children participate in basketball and softball. The father denied ever abusing the parties’ children. He stated that he cooks the meals and does the laundry and that the children each maintain their rooms and work in the garden.
The mother testified that she lives in Maine and that she sought custody of the parties’ children because she believed the father was abusive. She stated that the older child had reported to her in a telephone conversation in 2001 that the father had stabbed her with a fork and that he had been mentally abusive. The mother stated that since the divorce she had seen the children once in 2000 for approximately two to three hours and that she had last spoken with the children in December 2001. The mother testified that following the visit in 2000 she called DHR to report the children’s filthy living environment. The mother alleged that DHR required the father to get another home for the children.
' The mother described her living conditions in Maine as follows:
“We have approximately seven acres, we have a trailer, mobile home, on the property which we have added a big forty foot addition onto the trailer, so that there would be plenty of bedrooms and stuff of that nature. We have a garage built there. We have our own lawn care, landscaping and snow plowing business .on our land. It’s a nice home. Two more.payments the land is paid for, the house is already paid for.”
She also stated that the children have extended family in Maine, which the children had not seen in six years. She stated that at the time of the divorce she was unemployed in Maine with no means to travel to the hearing. She testified1 that, at the time of the hearing in this matter, she lived with her fiancé in the three-bedroom mobile home and that they had plans to marry in approximately two months. She averred that her fiancé does not drink excessively and that he does not use illegal drugs. She also stated that she and her fiancé have a two-year-old daughter. She testified that she did all the paperwork for *902 their lawn-care business but that she did not receive a specific income. She alleged that all the profit earned from the business was reinvested in the business. She stated that, on average, they gross $6,800 per month and that after expenses they are left with a net amount of approximately $3,200 per month.
The mother testified that the parties were married for seven years and that the father had a drinking problem. She described the father as “abrupt,” “mouthy,” and “violent.” The mother also alleged that the father customarily smoked marijuana. Regarding the events that precipitated the divorce, she testified that following a week’s vacation to visit family in Maine she had returned to Alabama, that she and the father had fought that night, and that she “couldn’t take it anymore.”
The mother alleged that she was not aware that a contempt motion had been filed against her for failure to pay the court-ordered child support. She stated that she did not read “a lot of the court paperwork” that she received in the mail. The mother admitted that she made her first child-support payment in November 2002. When asked why she waited over four years to make her first child-support payment, she stated that she did not have any special reason, other than she was not working. The mother testified that she had made a total of six child-support payments. She admitted that she did not know the parties’ children’s current grade levels or the names of either of parties’ children’s teachers. She also admitted that she did not send the children birthday presents and that the only gifts she had sent the children were for Christmas 2001. The mother stated that she felt “uneasy leaving the children,” yet she left them with the father for six years. The mother admitted that she had little contact with the children during those six years, that she did not pay child support for five years, and that the last time she spoke to the children was in 2001.
The older child testified in camera and the court sealed that testimony. Neither party’s behavior has been exemplary. After reviewing the record, we conclude that the trial court’s judgment transferring custody of the children to the mother is not supported by the evidence. At the conclusion of the modification hearing, the trial court announced its decision to grant the mother’s petition. The court’s decision was based on the father’s alleged substance abuse. The trial court stated:
“Having listened to the testimony, I am going to grant the motion for modification of custody. The [cjourt has some deep concerns about the substance abuse that apparently has been occurring all around these girls. Yet, this child, whom by her father’s admission, says she has seen some of it happen, whether inadvertently or not, adamantly denies there is anything going on. There is some deep concern there by the [cjourt. At the end of this school year, custody is to change.”
No. evidence was introduced concerning drug charges, and the father testified that at the time of the hearing he had not smoked marijuana in approximately two years. The mother left the marital home when the children were ages three and seven to return to her home state of Maine. She did not seek custody of the children when the parties divorced, In fact, she testified that she did not read her certified court documents that she received in the mail. She did not pay any of the court-ordered child support for approximately five years. The mother never sent the children birthday presents during the years she was gone. The only gifts she sent to the children were for Christmas 2001.
*903 There was no evidence from experts or counselors indicating that the children would be detrimentally affected if they continued to live with their father in Alabama. The testimony revealed that both children did well in school and were active in extracurricular activities. The older child’s testimony clearly reflects her preference to live with her father.
The evidence did reflect that the mother and her flaneé could provide the children with a nice homé; however, under Ex parte McLendon, supra, this is not sufficient to support a change of custody. See Andrews v. Andrews, 495 So.2d 688 (Ala.Civ.App.1986). It is not enough for the mother to show that her own lifestyle has improved; she must show that the change in custody would materially promote the children’s best interests and welfare, thereby justify uprooting them to Maine from the father’s home in Alabama. Ex parte McLendon, 455 So.2d at 866.
The evidence in the record does not support a change in custody. Accordingly, the judgment is reversed and the case'is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY and THOMPSON, JJ„ concur.
PITTMAN and MURDOCK, JJ., concur in the result, without writing.