Gil Martinez (father) and Lynda Martinez (mother) were divorced by order of the Circuit Court of Limestone County in July of 1990. Pursuant to the judgment of divorce, the care, custody, and control of the parties' minor child was awarded jointly to both parents.
Specifically, the particular language of this judgment of divorce provides as follows:
 "1. That the care, custody and control of James Ryan Martinez be exercised jointly between the parties.
". . . .
 "5. Presently, due to the fact that the [mother] will be taking a job opportunity outside the State of Alabama, the physical custody of the minor child of the parties, namely, James Ryan Martinez, shall be with the [father]. The [mother] shall have the right to have the minor child with her during the following periods which are considered by the court to be minimum rights and not to diminish in any way the joint custody provisions of the decree. . . ."
". . . .
 "Because it is the intention of the parties hereto that both [the father] and [the mother] spend as much time with said child as possible, both parties hereto are entitled to the physical custody of said child at any and all reasonable times. . . ." (Emphasis added.)
In December of 1990, the father filed a petition for rule nisi and for modification of the divorce. He alleged that the mother had failed to return the child to the father when the child's scheduled visitation with the mother was over, and he requested that the court modify her visitation schedule.
The mother answered and counterclaimed, alleging that she had difficulty returning the parties' young son to his father due to the fact that she could not arrange to travel home with the child by airplane. The mother lives in Arlington, Virginia, while the father resides in Huntsville, Alabama. She alleged that she did not return the child as scheduled because she did want him traveling by himself to Huntsville by airplane.
The mother also requested that the court modify its earlier judgment and that it grant her the care, custody, and control of the child due to a material change in circumstances. She also requested the trial court to order the father to pay child support and at least one-half of the child's travel expenses.
Following a hearing at which ore tenus evidence was presented to the trial court, the trial court found that the original divorce provided for joint custody and, thus, that the appropriate standard for modifying custody was the best interests of the child. The trial court then awarded primary custody of the child to the father and set up a visitation schedule for the mother.
The mother appeals, asserting that the trial court erred in granting primary physical custody to the father, that the father failed to meet his burden of proof so as to *Page 752 
justify a change in custody, and that the award of custody to the father was an abuse of discretion.
 "As a general rule, a parent seeking modification of a previous order granting custody bears the burden of proving that such a change in custody will materially promote the child's best interests. Ex parte McLendon, 455 So.2d 863
(Ala. 1984). However, the stringent standard of McLendon does not always apply in joint custody situations. Ex parte Couch, 521 So.2d 987
(Ala. 1988). Couch involved joint legal and physical custody where no judicial determination had been made which vested physical custody in either parent. Therefore, when the father sought custody in Couch, the Supreme Court applied the 'best interest' standard placing both parents on equal ground to gain custody of the children.
 "In the case before us, the parents had joint legal custody, but there was a previous judicial determination that placed primary physical custody with the mother. Therefore, the trial court was correct in applying the McLendon standard and requiring the father to show that a change in custody would materially promote the welfare and best interest of the child, offsetting the disruptive effect of uprooting the child."
Jenkins v. Jenkins, 541 So.2d 19, 20 (Ala.Civ.App. 1989) (emphasis added).
Here, the divorce granted both parents legal custody; however, it might also appear that the father was granted primary physical custody. If the divorce did grant the father primary physical custody, then pursuant to Jenkins, the mother would have to meet the heavier burden of McLendon in order to have custody changed to her.
We hold, however, that the mother did not waive her rights to primary physical custody. As in Couch, the mother and father in this case established an amicable arrangement, whereby the minor child was to live with his father for the benefit of the parties at the time of divorce. If we concluded that the mother had waived her legal rights to primary physical custody by allowing the child's father to have primary care, "we would be discouraging rational, reasoned, decisions by divorced parents regarding the welfare of their children." Couch at 990. Thus, we hold that "[c]onsidering the fact that the divorce judgment gave the parents equal rights, the only fair thing to do was to consider custody as if it had never previously been determined — applying the 'best interests' standard." Couch at 990.
The trial court in this case heard the witnesses testify and had an opportunity to determine what was in the child's best interests. In doing so, the trial court found that both parents were fit and that both could provide for the needs of the minor child. However, the court noted that the primary problem with the parties in this case was their animosity towards each other.
When a trial court makes a custody determination pursuant to the best interests standard, its judgment will not be reversed on appeal unless it is shown that the trial court abused its discretion in making its custody award. Hood v. Wilson,496 So.2d 76 (Ala.Civ.App. 1986). We have reviewed the record and find sufficient evidence to support the fact that the father is a fit person to have custody of his son. Thus, we hold that the court's award of primary physical custody to the father is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.