ROBERTSON, Presiding Judge.
This is a child custody modification case.
Angela Dawn Gann Bryowsky and Allan Dyoll Gann were divorced by the Marion County Circuit Court on January 14, 1992. The record does not contain a copy of the original divorce judgment, but it does contain a copy of an agreement between the parties that was apparently incorporated into the divorce judgment. The agreement provided that “the parties shall have joint custody of the minor child of the parties, namely Christopher Dyoll Gann (Date of birth, April 2, 1986), with physical custody to be vested with the [mother].”
On December 2, 1993, the father filed a petition in the Marion County Circuit Court, seeking sole custody of the minor child. The father alleged that the mother was planning to remarry, to move to Ripley, Mississippi, and to take the minor child with her. The father also alleged that it would be in the minor child’s best interests for custody to be awarded to him so that the minor child could remain in Hamilton, Alabama, where most of his extended family and friends live, where he attends school, and where he participates in numerous sports activities. On April 13, 1994, the mother filed a counterclaim, seeking sole custody of the minor child.
Following an ore tenus proceeding, the trial court entered a judgment on August 26, 1994, which stated: “That the prior decree of this Court is hereby modified and the [mother] is hereby awarded the permanent care, custody, and control of Christopher Gann, the minor child of the parties hereto.” The father’s motion for a new trial was denied on November 21,1994.
The father appeals, contending that the trial court erred by granting custody of the minor child to the mother.
In order to determine whether the trial court erred, we must first determine which standard of proof applies in modifying the prior custody agreement. Custody modification is a matter within the sound discretion of the trial court. Pierce v. Helka, 634 So.2d 1031 (Ala.Civ.App.1994). When the evidence has been presented ore tenus, the judgment of the trial court is presumed correct and it will not be altered absent an abuse of discretion or a showing of plain and palpable error. Id.
In custody modification actions, there are two different standards of proof. As a general rule, a parent seeking modification of a previous order granting custody bears the burden of proving that such a change in custody will materially promote the child’s best interests and that the benefit to the child will more than offset the inherently disruptive effect of uprooting the child. Ex parte McLendon, 455 So.2d 863 (Ala.1984). However, the stringent standard of McLendon does not always apply in joint custody situations. Ex parte Couch, 521 So.2d 987 (Ala.1988). Couch involved joint legal and physical custody where no judicial determination had been made that vested physical custody in either parent. Therefore, when the father sought custody in Couch, our supreme court applied the “best interest” standard, placing both parents on equal footing in regard to their efforts to gain custody *1319 of the children. Ares v. Martinez, 589 So.2d 750, 752 (Ala.Civ.App.1991); Jenkins v. Jenkins, 541 So.2d 19, 20 (Ala.Civ.App.1989).
We note at the outset that while the parties’ agreement in this case provided that physical custody was to be vested with the mother, the undisputed testimony by both parents was that they shared joint physical custody of the minor child equally, fifty-fifty, from January 14, 1992, until November 27, 1993, when the mother orally terminated the joint custody agreement. The record reveals that the mother works as a flight nurse for a hospital in Tupelo, Mississippi, and that she alternates between working three night shifts one week and working four night shifts the next week, from 7:00 p.m. until 7:00 a.m. Before November 27, 1993, the father had physical custody of the minor child when the mother was working. Therefore, the minor child was in his father’s custody at least 50% of the time.
This court recognizes that a trial court’s adoption or ratification of a joint custody agreement entered between parties does not constitute a prior judicial determination of custody, and that in subsequent custody modification proceedings, the “best interest” standard is the proper standard of proof. Watson v. Watson, 634 So.2d 589 (Ala.Civ.App.1994). To hold otherwise would be to discourage “rational, reasoned, [agreements] by divorced parents regarding the welfare of their children.” Couch, 521 So.2d at 990. See Mardis v. Mardis, 660 So.2d 597 (Ala.Civ.App.1995) (holding that where there is no prior order granting exclusive physical custody to one parent, the “best interests and welfare of the [child]” standard applies); Fitzhugh v. Fitzhugh, 634 So.2d 565, 566 (Ala.Civ.App.1994); Scott v. Scott, 563 So.2d 1044 (Ala.Civ.App.1990).
In this case, the trial court adopted the parties’ agreement which provided that “the parties shall have joint custody of the minor child.” The facts reveal that the parties actually shared true joint physical custody of the minor child. Therefore, the “best interest” standard is the proper standard of proof to be used in determining whether to modify the custody agreement in this case. Couch, supra; Watson, supra. Accordingly, in order to determine whether the trial court abused its discretion in awarding custody of the minor child to the mother, we will review the evidence in light of the best interest standard of proof.
The trial court may consider a number of factors in determining custody, including the age and sex of the child and each parent’s ability to provide for the child’s emotional, social, moral, material, and educational needs. Parker v. Parker, 628 So.2d 800 (Ala.Civ.App.1993). The trial court may also consider the respective home environments offered by each parent and the relationship of the minor child with each parent. Murph v. Murph, 570 So.2d 692 (Ala.Civ.App.1990). At the time of the hearing, the minor child was eight years old and was entering the third grade. The record reveals that both parents love him very much and that both parents can provide for his material needs.
The record contains undisputed testimony that the minor child’s father, maternal grandparents, paternal grandparents, a majority of his aunts, uncles, and cousins, and all of his friends live in Hamilton, Alabama, where the minor child had resided all of his life until the mother remarried and they moved to Mississippi. There was also undisputed testimony that the minor child was very involved in sports activities in Hamilton and that the father participated in those activities by coaching the minor child’s teams. Additionally, the minor child’s paternal grandparents own a sporting goods store in Hamilton.
The minor child specifically testified that he did not want to live in Ripley, Mississippi, because he did not have any relatives living there and because he does not like to make new friends. The minor child also testified that when he lived in Hamilton, one of his parents would pick him up after school and that then he would go to the home of one of his grandparents. He further testified that the father helped him with his homework at night.
The father testified that he had developed a study routine for the minor child whereby after dinner the minor child would do his homework, the father would check the work, *1320 and then, if anything was incorrect, the minor child would make the corrections. The father and his supervisor at work both testified that the father’s job was flexible and that he would be able to continue to pick up the minor child from school. The father testified that he owned his own home and that the minor child had his own room. Billy Cantrell, the mother’s father, testified that whenever the father would bring the minor child to stay with the mother, he would inform them where he could be reached in case of a problem. Cantrell also testified that the minor child was “happy” living in Hamilton, Alabama.
The mother testified that the minor child had informed her that he wanted to spend more time with the father, and that since she had terminated the joint custody agreement, the minor child had been more hostile each time he had been forced to return from the father’s home. Additionally, there was testimony that on the nights when the mother works as a flight nurse she leaves home at 5:00 p.m. and returns the next morning at 7:00 a.m. Therefore, on the nights when the mother is working, the minor child sees the mother only from the time he comes home from school until 5:00 p.m., when she leaves for work. The mother is not at home to prepare his dinner, to eat dinner with him, to help him with his homework, or to put him to bed.
The stepfather, Joe, also works as a flight nurse. He works two 24-hour shifts per week and on the days he works, he leaves at 5:45 a.m. and returns home the next morning at 8:00 a.m. Obviously, when both the stepfather and the mother are working, there will be no one at home to care for the minor child. While the stepfather testified that he would not have to work at the same time as the mother, he also admitted that he was not the head nurse and that the other flight nurses did not have any choice in scheduling their shifts. Thus, it is unreasonable for the mother and the stepfather to presume that they will never have to work at the same time.
Pat Bryowsky, the stepfather’s former wife, testified that during their marriage, their children were solely her responsibility. She testified that the stepfather would not take his children to school and would not pick them up after school. Pat also testified that their middle child, who is 15 and does not have a driver’s license, is now living with the stepfather, and that when the stepfather and the mother are at work it will probably be that child who will care for the minor child.
Several witnesses testified that the father and the minor child attended church regularly. The stepfather testified that he was not a member of any church, and he admitted that even though the trial court had previously entered an order prohibiting premarital sexual activity between him and the mother when the minor child was present, the mother had continued to bring the minor child with her to Mississippi to spend the weekends with the stepfather.
The record contains conflicting testimony concerning the education needs of the minor child. The minor child’s second grade teacher, Susan Brown, testified that the minor child’s grades were poor the first six weeks of school, that she had consulted the father regarding the minor child’s grades, and that afterwards, the minor child’s grades had improved and he had made the A/B honor roll. Brown also testified that the father had requested that the minor child receive counseling at the school but that the mother had refused.
The mother testified that she had had the minor child “tested” by Lynn High, a psy-chometrist and speech language pathologist, and that the minor child had been diagnosed with attention deficit disorder and hyperactivity. As a result of that diagnosis, and in spite of the father’s objections, the minor child was placed on medication. High testified that the minor child’s behavior and ability to concentrate had improved on the medication. However, Brown, the only impartial witness, testified that she was aware the minor child had been placed on medication by the mother during the final six-week period of school, but that during that time the minor child was less attentive, he had more emotional problems, his work habits worsened, he cried some days, and he was very nervous. Additionally, Brown testified that the minor child’s grades decreased. Despite *1321 Brown’s testimony that the minor child’s behavior and attentiveness were better when he was not taking the medication, the mother continued giving the medication to the minor child.
While not dispositive, a child’s expressed preference to live with one parent is a factor-for the trial court’s consideration. Walker v. Walker, 568 So.2d 823 (Ala.Civ.App.1990). In this case, the minor child adamantly testified on two separate occasions that he wanted to live with his father. The mother also testified that the minor child wanted to spend more time with the father.
Given the minor child’s emotional, social, moral, material, and educational needs, the respective home environments offered by each parent, the relationship of the minor child with each parent, as well as the minor child’s expressed preference to live with his father, we conclude that the testimony clearly indicates it would be in the minor child’s best interests for custody to be awarded to the father. The father’s job allows him to provide a stable home environment for the minor child and also allows him to prepare the minor child’s dinner, to help the minor child with his homework, and to participate in the minor child’s sports activities. The mother’s job requires her to be away during the very times that the minor child is at home and needs her attention, i.e., at night and on the weekends. We find that the award of custody of the minor child to the mother, which subjected the minor child to having to move from Alabama to Mississippi; to change schools and churches; to withdraw from his sports activities; and to adjust to a new home, a new stepfather, and new stepbrothers, was error.
The evidence is overwhelming that it is in the minor child’s best interests and welfare that custody be awarded to the father. We have also reviewed the evidence in light of the McLendon standard and conclude that the evidence is clear that the change in custody will materially promote the child’s best interests and welfare and that the positive good brought about by the change will more than offset the inherently disruptive effect caused by changing his residence from Mississippi back to his hometown of Hamilton. See Ex parte Breedlove, 673 So.2d 415 (Ala.1995).
Consequently, we hold that the trial court abused its discretion in awarding custody of the minor child to the mother. We reverse the judgment of the trial court and hereby remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES and MONROE, JJ., concur.
THIGPEN and CRAWLEY, JJ., concur in the result only.