MONROE, Judge,
dissenting.
The mother raised the issue whether the trial court used the correct standard of review when it awarded custody of her daughter to the child’s father. As the majority and the trial court both stress, this case is a custody case between the natural mother and the natural father. In its order awarding custody to the father, the trial court did not state the standard it applied, if any, in reaching its decision, and it did not favor us with any specific findings to support its decision. The court simply made the statement that it found that the child is dependent — an irrelevant finding in an “old-fashioned custody battle” — and awarded custody to the father. The court then set out a visitation schedule for the mother and pronounced the case closed.
Because there is no prior judgment granting custody to either parent, the correct standard to be applied in determining the custody arrangement is “the best interest of the child.” Ex parte Couch, 521 So.2d 987 (Ala.1988); Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996). After reviewing the record in this ease, I do not believe that awarding the father custody of the two-year-old child is in the child’s best interest. I believe that the trial court abused its discretion in awarding custody to the father, therefore, I must respectfully dissent.
While I recognize that the McLendon standard does not apply in this case because there has been no prior judgment granting custody to one parent, I believe that one of the policy reasons behind McLendon is an important consideration whenever a change in custody is at issue, i.e., whether a change in custody “will more than offset the inher *368 ently disruptive effect caused by uprooting the child.” Jones v. Sprinkle, 621 So.2d 1341, 1342 (Ala.Civ.App.1993), citing Ex parte McLendon, 455 So.2d 863 (Ala.1984). See also, Ex parte Bryowsky, 676 So.2d 1322, n. 3 (Ala.1996). As a practical matter, whether a prior judgment exists has little or no relevance to a child who must leave a familiar home and family if custody is changed.
In this ease, the parties never married each other, and the child has lived with her mother and maternal grandparents since birth. From the record, it appears that for all intents and purposes the child has been raised by her maternal grandmother, who is a nurse. The father lives at home with his parents and brother. He testified that when he has had the child during visitation, he always has someone help him feed the child, bathe the child, and change the child’s diapers. When asked why he did not spend time alone with his child, he responded, “I do if I have to,” then added that “[we] take care of her as a family.” It appears from the evidence that, since her birth, the child has spent one night at her father’s home. Because of an allegation of abuse, the father had not seen the child for several months prior to the custody hearing.
At the hearing, the father admitted that he had been arrested for theft and that he had smoked marijuana in the past, but he claimed that he does not smoke it any more. The father testified that he is engaged and that his fiance is willing to help with the child. The father also testified that he had been dating the mother off and on for three years and planned to marry her, but he broke up with her when she was four or five months pregnant.
After the trial court issued its order in this case, a friend of the mother signed an affidavit, submitted with the mother’s motion for a new trial, saying that she believed the mother and her family had “done a good job in raising [the child].” In her affidavit, she went on to say that the year before, the father had come to her house with friends and was “acting somewhat strange.” She also said that she smelled “something peculiar.” The friend’s daughter also signed an affidavit, submitted with the mother’s motion for new trial, saying that that same night she saw the father smoking marijuana; that he had become violent and verbally abusive to the mother, who was with them; that she thought the mother was a good mother; and that she thought that the child “is best off with [the mother] and her real family.”
Furthermore, the guardian ad litem appointed to represent the child said that although he believed this was a hard case, he would have to recommend that custody of the child be left with the mother. As the guardian ad litem pointed out, everything the father has done with or for the child has been done pursuant to an order of the court. Additionally, a report to the court prepared by a social worker with the state Department of Human Resources recommended that custody of the child be given to the maternal grandmother.
As I have stated in the past, I am troubled when the trial court disregards the recommendation of the guardian ad litem. The guardian ad litem is appointed to represent the interests of the child, not the interests of one parent or the other. See § 12-15-8, Ala.Code 1975. In this case, the trial court gave us no indication that the guardian ad litem’s recommendation was even considered.
Based on all the evidence, I do not think it is reasonable to believe that the best interests of the child would be served by removing the child from the only home she has known and awarding custody to the father. It appears that neither parent is ready for the demands of parenthood, and neither possesses adequate parenting skills. Sadly, regardless of which parent has custody of the child, the responsibility of raising her will fall on the grandparents. From the evidence, it appears that the change in custody ordered by the trial court means that the child will be cared for by the father’s parents rather than the mother’s parents; and the maternal grandmother had earlier filed a petition to terminate the parents’ parental rights so that she could adopt the girl. I do not think that a change in custody to the father would be in the best interest of the child, and it certainly will not “offset the inherently disruptive effect caused by uprooting the child.” I be *369 lieve that the judgment of the trial court is plainly and palpably wrong, and therefore, that the judgment should be reversed.
At the very least, this case should be remanded to the circuit court with instructions for the court to apply the correct standard in awarding custody and to set forth at least some findings in support of its judgment. I must respectfully dissent.