Debra Denise Ratliff Brown ("the mother") appeals an order that amended the child-custody and child-support provisions of a divorce judgment. We affirm.
In September 2004, the mother sued William Worth Brown III ("the father") for a divorce and sought primary physical custody of the parties' only child, a daughter named Amanda, who was born in 1995. The father answered the mother's complaint and counterclaimed for a divorce and for primary physical custody of Amanda. After receiving evidence ore tenus, the trial court, on April 18, 2006, entered a divorce judgment ("the April 18 judgment"). In pertinent part, the April 18 judgment stated:
 "CUSTODY: That the care, custody, and control of the parties' minor child Hailey is hereby awarded to the Plaintiff.
 "VISITATION: That the Defendant shall have the right of visitation with any child of the parties.
 "CHILD SUPPORT: The Defendant shall pay to the Plaintiff the sum of four hundred fifty nine dollars ($459.00) per month for the support and maintenance of the minor child of the parties. The Court has taken into consideration the CS 41s filed by the parties, however, the Court finds that the Plaintiff does not accurately reflect her true gross income. The gross on the CS41 as submitted does not include substantial long term overtime income. Accordingly, the Court finds that the Plaintiffs gross income is in the amount of four thousand four hundred and twenty eight ($4,428.00) per month.
 ". . . .
 "MEDICAL INSURANCE: The Defendant shall provide major medical insurance for the minor child and all of the non-covered medical expenses shall be shared equally by the Plaintiff and the Defendant. The Defendant shall provide the Plaintiff proof of insurance coverage on the minor child. The Plaintiff shall furnish the Defendant copies of all non-covered medical expenses and the Defendant shall reimburse the Plaintiff within thirty (30) days of receipt of same."
(Emphasis added.)
On May 24, 2006, more than 30 days after the entry of the April 18 judgment, the father moved the trial court to alter, amend, or vacate the April 18 judgment, asserting the following grounds:
 "1. [T]he judgment of this court was inconsistent with applicable law of the State of Alabama;
 "2. [T]he judgment of this court was contrary to the weight of the evidence presented at the hearing; and
 "3. [T]he judgment of this court was inconsistent with the facts presented at trial."
The mother filed a response to the father's motion in which she asserted that that motion was due to be denied on the ground that it was tardy under Rule 59(e), Ala. R. Civ. P., because it was filed more than 30 days after the entry of the April 18 judgment. However, on June 29, 2006, more than 42 days after the entry of the April 18 judgment, the trial court entered an order ("the June 29 amendment") amending the April 18 judgment. In pertinent part, the June 29 amendment stated:
 "THIS MATTER COMING ON TO BE HEARD on the Defendant's Motion to Alter, Amend, or Vacate the Final Judgment of Divorce entered on April *Page 1055 
18, 2006. The Court having taken same into consideration finds that the following relief is due to be granted. It is therefore,
 "ORDERED and ADJUDGED by the Court as follows:
 "CUSTODY: That custody of the minor child Amanda Leigh is hereby awarded to the Defendant.
 "CHILD SUPPORT: The Plaintiff shall pay to the Defendant the sum of four hundred and fifty nine dollars ($459.00) per month for the support and maintenance of the minor child of the parties. The said monthly child support payment is based on computation pursuant to the Alabama Rules of Judicial Administration Rule 32, as evidenced by the CS-12 form contained in the file.
 ". . . .
 "VISITATION: The Plaintiff shall have the . . . right of visitation with the minor child.
 ". . . .
 "MEDICAL INSURANCE: That the Plaintiff
provide medical insurance for the minor child of the parties and the Plaintiff and the Defendant shall split the cost of the noncovered expenses 50/50.
 "That all other aspects of the Final Judgment of Divorce entered April 18, 2006 shall remain in full force and effect."
(Emphasis added.)
On July 7, 2006, the mother petitioned this court for a writ of mandamus ordering the trial court to vacate the June 29 amendment and to reinstate the April 18 judgment in its entirety. As the ground of her petition, the mother asserted that the tardiness of the father's motion to alter, amend, or vacate the April 18 judgment deprived the trial court of jurisdiction to enter the June 29 amendment. On July 19, 2006, the trial court entered an "amended order" that stated:
 "THE COURT HAVING BEEN presented with a courtesy copy of the Writ of Mandamus and this Court's review of same, does offer the following as an amendment to the Order entered June 29, 2006.
 "It was this Court's intention when it published the original Order herein that the custody of the minor child be awarded to the Defendant. The first draft of this decree so stated (the first draft having been destroyed and can not be attached as evidence).
 "Upon the printing of the Final Order, there was a reversal of the parties, in that portion of the Order awarding custody. The Court is at a loss to explain what happened; however, it is clear if one reads the Final Judgment entered on April 18, 2006, it does not carry the parties' minor child by name.
 "Again, the Court is uncertain as to exactly what happened, but this Order should be read as a correction of a scrivener's error.
 "This Court can only assume that when the draft was merged as a final copy, part of another Order was picked up somehow, inserted therein, and was not discovered by the Court until the Motion was filed by the Defendant on the Motion to Alter or Amend."
(Emphasis added.)
On August 9, 2006, the mother filed a notice of appeal from the June 29 amendment and thus initiated the appeal now before us. On August 29, 2006, this court, in an unpublished order, issued a writ of mandamus ordering the trial court to vacate the June 29 amendment and to reinstate the April 18 judgment in its entirety; however, the father, on September 12, 2006, petitioned the Alabama Supreme Court for a writ of mandamus ordering *Page 1056 
this court to quash its writ of mandamus. On September 14, 2006, this court stayed the mother's appeal pending the resolution of the mandamus petition. In an opinion delivered on February 23, 2007, the supreme court issued a writ of mandamus ordering this court to quash its writ of mandamus. Explaining its reasoning, the supreme court stated:
 "The father contends that the Court of Civil Appeals erred in determining that the trial court had exceeded its discretion and in ordering the trial court to vacate its amended order, dated June 29, 2006, and to reinstate its original judgment of divorce, dated April 18, 2006. According to the father, although more than 30 days had passed since the final judgment was entered, the trial court nonetheless had jurisdiction to enter its June 29, 2006, order because, the father argues, the trial court was correcting a scrivener's error.
 "Rule 60(a), Ala. R. Civ. P., provides:
 "`(a) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and error therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or thereafter, such mistakes may be corrected by the trial court . . . .'
 ". . . .
 "In Deramus Hearing Aid Center, Inc. v. American Hearing Aid Associates, 950 So.2d 292 (Ala. 2006), this Court addressed the issue whether a trial court had the authority to correct a clerical error in its written order entering a summary judgment for the wrong party. In its corrected order, issued over two months after the original order, the trial court stated that it had inadvertently entered a summary judgment in favor of Deramus Hearing and that the record of the summary-judgment hearing would support its original intent to enter a summary judgment for American Hearing. Deramus Hearing appealed, arguing that the amended order contained corrections that were not clerical in nature and, consequently, that Rule 60(a), Ala. R. Civ. P., did not authorize the trial court to make such a substantive change in the order. This Court held that Rule 60(a), Ala. R. Civ. P., was broad enough to authorize the trial court to correct such an inadvertent error because the correction did not involve a reweighing of the evidence or reflect a change of mind regarding the decision. The Court noted that the trial court stated that the record would establish that the original order had improperly entered a summary judgment for Deramus Hearing because the record clearly established the intent of the trial court to enter a summary judgment for American Hearing. This Court, recognizing that the corrected order made the record speak the truth, held that the trial court did have the authority to set aside its original order entering a summary judgment for Deramus Hearing and issue a new order entering a summary judgment for American Hearing.
 "Like the materials before us in Deramus Hearing, the materials in this case clearly establish that the trial court, when it issued the June 29, 2006, order, was correcting a scrivener's error in its April 18, 2006, order, making the record speak the truth. The fact that the April 18, 2006, order awarded custody of a child designated as `Ha[i]ley' to the mother evidences that that order contained clerical errors. Additionally, the trial court's amended order indicates that the corrections did not involve a reweighing of the evidence, a change of *Page 1057 
mind, or the rendering of a `different' judgment.[1] The trial court's changes here involved corrections to make the record speak the truth. Because the trial court's corrections did not involve judicial reasoning or the rendering of a `different' judgment, the trial court, pursuant to Rule 60(a), Ala. R. Civ. P., had the authority to correct and was thereby acting within its discretion in correcting the mechanical errors in its April 18, 2006, order by issuing the June 29, 2006, order. As we stated in Deramus Hearing, `[a] contrary conclusion would require this Court to call into question the veracity of the trial court by contradicting the trial court's express disavowal of any such intention. This we decline to do.' 950 So.2d at 295. Therefore, the Court of Civil Appeals erred when it ordered the trial court to vacate its June 29, 2006, order and to reinstate the April 18, 2006, order.
 "[1] In Deramus Hearing, this Court stated that a `different' judgment is a judgment that `purports to change the facts or to reweigh the evidence.' 950 So.2d at 295."
Ex parte Brown, 963 So.2d 604, 607-09 (Ala. 2007).
On March 27, 2007, this court quashed the writ of mandamus it had issued on August 29, 2007, and lifted the stay of the appeal now before us.[1]
As a threshold matter, we must determine whether the mother's appeal is timely. The father argues that, because the mother filed her notice of appeal more than 42 days after the entry of the April 18 judgment, the mother's appeal is untimely. The mother, on the other hand, argues that she should not be required to have appealed within 42 days after the entry of the April 18 judgment because she did not receive any notice that the trial court had ruled against her on the issues of child custody and child support until the trial court entered the June 29 amendment more than 42 days after it had entered the April 18 judgment — the erroneous reference to the parties' daughter as "Hailey" in the April 18 judgment did not indicate that the award of primary physical custody to the mother and the order requiring the father to pay child support were clerical errors, as is demonstrated by the fact that the father did not assert that those rulings were clerical errors in his postjudgment motion.
This court has indicated that an order correcting a judgment pursuant to Rule 60(a), Ala. R. Civ. P., relates back to the date of the original judgment, becomes a part of the original judgment, and does not extend the period for filing a notice of appeal beyond 42 days from the date the original judgment was entered. E.g. Luker v. Carrell, [Ms. 2040318, March 31, 2006] ___ So.2d ___, ___ (Ala.Civ.App. 2006), reversed on other grounds, Ex parte Luker, [Ms. 1051805, August 31, 2007] ___ So.2d ___ (Ala. 2007). However, that rule presupposes that the original judgment accurately indicates which party the trial court intended to rule against because a party cannot appeal a ruling that is not, on its face, adverse to that party. See Olson v. State, 975 So.2d 357, 359
(Ala.Civ.App. 2007) (opinion on return to remand) ("Generally, a party may appeal only an adverse ruling. CSX Transp.,Inc. v. Day, 613 So.2d 883, 884 (Ala. 1993) (`[I]t is familiar law that an adverse ruling below is a prerequisite to appellate review.'); Figures v. *Page 1058 Figures, 658 So.2d 502, 504 (Ala.Civ.App. 1994) (`The only matter for [the appellate court's] consideration is an adverse ruling of the trial court. Davis v. HartfordAccident Indemnity Co., 335 So.2d 688
(Ala.Civ.App. 1976).'); and Rountree v. Sanders,413 So.2d 1159, 1159-60 (Ala.Civ.App. 1982) (`Upon an appeal, only adverse rulings of the trial court will be reviewed.'); see alsoPublic Serv. Comm'n of Missouri v. Brashear Freight Lines,Inc., 306 U.S. 204, 206-07 (1939) (stating that the successful party below lacked the right to appeal from a decree denying an injunction)."). In the case now before us, the April 18 judgment did not indicate on its face that the trial court intended to rule against the mother with respect to primary physical custody and child support. Consequently, the mother could not appeal the trial court's rulings on those issues until the trial court entered the June 29 amendment in which the trial court indicated for the first time that it was ruling against the mother on those issues. The mother filed her notice of appeal within 42 days of the entry of the June 29 amendment. Therefore, we conclude that the mother's appeal is timely.
On appeal, the mother first argues that the trial court erred in implicitly finding that awarding primary physical custody to the father was in Amanda's best interest because, she says, the evidence established: (1) that the father has experienced migraine headaches and has suffered from depression; (2) that the mother has been the family's primary source of income; (3) that the father had a long-term adulterous relationship with a female coworker and committed one act of adultery with his previous wife; and (4) that the father will not allow Amanda to spend the night with the mother's parents.
Because the trial court based its award of primary physical custody to the father on evidence it received ore tenus, we must view the evidence in the light most favorable to the father, see Diggs v. Diggs, 910 So.2d 1274, 1275
(Ala.Civ.App. 2005), and we must affirm the trial court's custody award unless it is so unsupported by the evidence as to be plainly and palpably wrong, see Ex parte Bryowsky,676 So.2d 1322, 1324 (Ala. 1996). Moreover, because the trial court made no express findings of fact with respect to its custody award, we must presume that the trial court made those findings of fact that would support that award. See Exparte Bryowsky, 676 So.2d at 1324.
The trial court had before it evidence from which it could have found that the father was Amanda's primary caregiver. The father testified that he does all the grocery shopping for Amanda's meals, that he gets Amanda up each morning, that he prepares Amanda's breakfast each morning, that he takes Amanda to and from school each day, that he prepares Amanda's supper most of the time, that he is the parent who helps Amanda with her homework, that he is the parent who washes Amanda's clothes, that he is the parent who takes Amanda to the doctor and the dentist, that he is the parent who takes time off from work to stay with Amanda when she is sick, that he is the parent to whom Amanda goes when she gets sick in the middle of the night, that he is the parent who takes Amanda to get her hair cut, that he is the parent who disciplines Amanda, and that he is the parent with whom Amanda spends most her time when she is not attending school. There was also evidence from which the trial court could have found that the mother works longer hours than the father and that her longer work hours would prevent her from providing Amanda with care comparable to that provided by the father. *Page 1059 
With respect to adultery, there was evidence from which the trial court could have found that the father had not committed adultery since 2004; that Amanda was unaware of, and, therefore, unaffected by, the father's adultery; and that the mother had also committed adultery.
With respect to the father's migraine headaches and depression, there was evidence from which the trial court could have found that these problems would not impair the father's ability to care for Amanda. Moreover, there was evidence from which the trial court could have found that the father was justified in refusing to allow Amanda to spend the night with the mother's parents because of the danger to Amanda posed by the mother's brother, who lived with the mother's parents. Finally, the fact that the mother has the ability to make more money than the father does not tend to prove that awarding her primary physical custody would be in Amanda's best interest. Accordingly, we must affirm the trial court's award of primary physical custody to the father because that award is not so unsupported by the evidence as to be plainly and palpably wrong. See Ex parte Bryowsky, 676 So.2d at 1324.
The mother also argues that the trial court erred in including her overtime compensation for purposes of calculating her child-support obligation because, she says, she introduced evidence establishing that her overtime income is not substantial and continuing.
 "This court has held that `overtime' income falls within the definition of income for purposes of calculating child support, `to the extent that such income is sufficiently substantial and continuing, and that it can be accurately determined.' State ex rel. Smith v. Smith, 631 So.2d 252, 255
(Ala.Civ.App. 1993). However, `there may be circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, thereby justifying its exclusion from income for purposes of setting child support or deviating from the child support guidelines, in which case the trial court should make a finding to that effect.' Id.;
see also, Herman v. Human, 623 So.2d 326
(Ala.Civ.App. 1993)."
Jordan v. Jordan, 688 So.2d 839, 841
(Ala.Civ.App. 1997).
In the case now before us, the trial court included $615 per month in overtime income in the mother's income for purposes of calculating her child-support obligation. The evidence established that, on average, the mother earned an amount of overtime income each month during 2003, 2004, and 2005 that was equal to or greater than $615. Therefore, we conclude that the mother's overtime income was substantial and continuing and that it could be accurately determined to be a minimum of $615 per month.
The father has moved this court to award him damages pursuant to Rule 38, Ala. R.App. P., on the ground that the mother's appeal is frivolous. Although we have concluded that the trial court's judgment is due to be affirmed, we do not find the mother's appeal to be frivolous; therefore, we deny the father's motion to award him damages pursuant to Rule 38. The father has also moved this court to award him an attorney's fee; however, he has not stated why he is entitled to such an award. Therefore, we deny that motion as well.
AFFIRMED.
THOMPSON, P.J., and MOORE, J., concur.
THOMAS, J., dissents, with writing, which PITTMAN, J., joins.
[1] Due to a delay in the preparation of the record and delays in the parties' submission of their briefs, this appeal was not assigned to the author of this opinion until December 18, 2007. *Page 1060