REL:  January 5, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

———————————————

### CL-2023-0235

———————————————

**Jeremy Halstead**

**v.**

**Wendy Halstead**

**Appeal from Elmore Circuit Court
(DR-20-10.01)**

EDWARDS, Judge.

Jeremy Halstead ("the father") appeals from a judgment entered by the Elmore Circuit Court ("the trial court") on his claims regarding modification of custody and child support against Wendy Halstead ("the mother").

The parties were divorced by a judgment entered by the trial court on April 14, 2020. They had two sons ("the sons"), who were born in April 2005 and October 2008. According to the parties, the divorce judgment incorporated a settlement agreement that was entered between the parties. Pursuant to that judgment, the parties were awarded joint legal custody of the sons; the mother was awarded final decision-making authority as to legal-custody issues; the mother was awarded sole physical custody of the sons; and the father was awarded visitation at the discretion of the sons. The record does not include either a copy of the divorce judgment or the settlement agreement that was incorporated into that judgment.

In June 2020, the mother filed in the trial court a verified petition for a rule nisi against the father. She requested that the trial court hold the father in civil contempt based upon the father's having failed to pay his court-ordered child-support obligation of $592 per month. The mother also alleged that the father had "moved [the older son] out of the [mother's] house on April 24, 2020, and ha[d] taken full custody of [him]

and ha[d] rarely allowed [the mother] visitation of said child";[1] that the living arrangement for the older son would require him to change schools and that he "would be at a significant disadvantage in his schooling if in [the father's] custody during the school year"; that the father had spoken negatively about the mother to the older son and had damaged the older

_____

[1]At trial, the mother testified that the father had "set-out visitation" in the divorce judgment but that "[i]t's not being utilized right now" as to the younger son; she stated that the older son had resided with the father after the entry of the divorce judgment, except for a period of six months. The father's counsel represented the visitation provision to the trial court as follows:

"[Counsel for the father]: I have a copy of the agreement with me that's actually filed with the court from the divorce, the only operative agreement. There's a schedule in there. But that schedule allowed both of [the sons] to short circuit visitation with the other parent.

"We had a hearing on this issue, Your Honor, after the divorce was filed. Judge Fuller presided over that hearing. He said, 'It's not how I would have drafted it; it's sloppy. But it's their agreement, and I'm not going to change it.' It allowed [the older son] to extend visitation as he saw fit with his father. He took that to the logical extreme and moved in with his father. The younger [son], it allowed him to not have visitation with the father at his choice, and that relationship is deteriorating. There's no visitation schedule. There's a suggestion."

3

son's relationship with her; and that the father had failed to give her certain items that purportedly had been awarded to her as part of the marital-property division in the divorce judgment.[2] The mother also requested that the trial court "[a]ward [her] any other relief to which [she] may be entitled."

The father filed an answer denying the mother's allegations; he also filed a counterpetition for modification of custody and child support. The father alleged, in part, that a material change in circumstances had occurred after the entry of the divorce judgment and that he should be awarded sole physical custody of the parties' sons. The mother filed an answer denying the allegations made in the father's counterpetition.

In November 2020, the mother filed a motion to amend her petition for a rule nisi; she attached to her motion an amended petition that included a claim seeking to hold the father in contempt for allegedly not allowing her to exercise sole physical custody of the older son and a claim

---

[2]An affidavit of the mother that is included in the record avers that "[t]he language in the [parties' settlement] agreement was not carefully worded as there is nothing protecting my visitation of [the older son] or giving me final say or any input on the visitation extension."

seeking a modification of custody. The mother alleged that there had been a deterioration in the older son's school grades and as to the circumstances relating to the father's "disability." She requested that the trial court modify the father's visitation to provide that the older son could expand visitation with the father only with the mother's consent.[3] She also requested that the father's child-support obligation be modified by requiring the parties "to equally divide extra expenses for extracurricular activities for the children," which was not expressly addressed in the settlement agreement that was incorporated into the divorce judgment, and requested "any other relief to which the [mother] may be entitled."

The father filed a response objecting to the mother's motion to amend her petition or, in the alternative, requesting that, if the motion to amend was allowed, the trial court continue the final hearing, which was scheduled for December 21, 2020, to allow for additional discovery. The trial court did not expressly rule on the mother's motion to amend.

---

[3]During the pendency of this case, the older son dropped out of high school and obtained a high-school-equivalency diploma in January 2023. According to the father, the older son intended to enroll in trade school.

However, on December 15, 2020, the trial court entered an order rescheduling the final hearing for February 10, 2021. Thereafter, the mother filed discovery requests relating to matters described in her amended petition, without objection by the father, and the father filed a motion to extend the time for him to respond to the mother's discovery requests and to reset the final hearing that was scheduled for February 10, 2021. On February 9, 2021, the trial court entered an order rescheduling the final hearing for April 6, 2021. The father responded to the mother's December 2020 discovery requests. Eventually, the final hearing was rescheduled for June 22, 2021.

A hearing was held on June 22, 2021, after which the trial court entered an order that stated:

> "This case was called for final hearing on June 22, 2021. The parties announced through their respective counsel that a full and complete settlement of the issues had been reached and the matter resolved. The Court therefore Orders as follows:

> "1. That counsel … shall file with the Court[] a fully executed Settlement Agreement and Decree within 14 days of the date of this Order."

Thereafter a settlement agreement was filed with the trial court ("the July 2021 settlement agreement"). On July 29, 2021, the trial court entered a judgment that incorporated the July 2021 settlement agreement by reference and denied all relief not otherwise specifically granted. The mother, whose counsel had been allowed to withdraw from representation after the June 22 hearing, appeared pro se and timely filed a postjudgment motion to vacate the July 2021 judgment. She argued that the July 2021 settlement agreement that had been filed with the trial court had been based, in part, on misrepresentations by the father's counsel and her former counsel about further negotiations that were to occur following the June 22 hearing and on misrepresentations regarding the father's income. Thereafter, the trial court timely entered an order vacating the July 2021 judgment and ordering the parties to mediation, which was unsuccessful. The trial court again set the case for a final hearing, which was held on January 31, 2023.[4]

---

[4]The father has not argued on appeal that the trial court erred by vacating the July 2021 judgment.

After ore tenus proceedings, the trial court entered a judgment on February 11, 2023. The February 2023 judgment awarded the father sole physical custody of the older son, awarded the mother sole physical custody of the younger son, and awarded the mother visitation with the older son every other weekend unless she and the older son agreed on an alternative schedule. The father's visitation with the younger son remained unchanged from the visitation awarded in the divorce judgment. The February 2023 judgment further stated:

"3. Child support is not ordered at this time due to the custodial arrangement[;] however[,] when [the older son] reaches the age of majority, [the father] shall pay [the mother] child support for [the younger son] pursuant to Rule 32[, Ala. R. Jud. Admin.,] in the amount of $557 per month.

"4. [The father] and [the mother] shall equally divide any extracurricular or health/dental costs incurred for the children. …

"5. [The father] shall reimburse [the mother] $300 for unpaid medical/dental expenses along with any unpaid extracurricular activities for [the younger son].

"6. Any [S]ocial [S]ecurity monies shall be maintained by the party having physical custody of the child."

The February 2023 judgment denied all other requested relief.

The father timely filed a postjudgment motion, arguing that the trial court had erred regarding its determinations as to child support and extracurricular expenses and that the February 2023 judgment

> "set a schedule for [the mother] to visit with the older [son] (which is what the law requires) while leaving in place the agreement of the parties concerning the younger [son]. As said agreement leaves to the discretion of the [younger son] decisions concerning visitation, the same is not lawful. [The father] would request that this Honorable Court set a specific visitation schedule concerning the younger [son], in the same fashion that the Court has set a schedule for the eldest [son]."

The mother filed a response to the father's postjudgment motion, arguing, in part, that the settlement agreement that was incorporated into the divorce judgment included a visitation schedule. On March 10, 2023, the trial court entered an order noting that the divorce judgment did "lay out visitation with the younger [son]" and denying "all other requests" made by the father in his postjudgment motion. The father timely filed a notice of appeal to this court.

On appeal, the father raises issues regarding the trial court's determinations as to visitation and child support. Our review of those issues is subject to the presumptions that attend the ore tenus rule. See Ex parte Patronas, 693 So. 2d 473, 474-75 (Ala. 1997). Thus, the trial

court's evidentiary findings are presumed to be correct, and this court cannot reverse the trial court's judgment based on its factual determinations unless those determinations are so unsupported by the evidence as to be plainly and palpably wrong or to constitute an abuse of the trial court's discretion. Id. "'[I]n the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.'" Id. at 475 (quoting Ex parte Bryowsky, 676 So. 2d 1322, 1324 (Ala.1996)); see also Allen v. Allen, 966 So. 2d 929, 932 (Ala. Civ. App. 2007). We review the trial court's conclusions of law and its application of law to the facts under the de novo standard of review. See Espinoza v. Rudolph, 46 So. 3d 403, 412 (Ala. 2010). Further,

> "[t]he modification of a prior decree based upon changed circumstances of the parties is largely within the sound discretion of the trial court, and we will disturb the exercise of such discretion only when it is abused to the extent that the judgment is plainly and palpably wrong. … When, as in this case, the decree fixing the amount of support is based on an agreement between the parties, the decree should not be modified except for clear and sufficient reasons and after thorough consideration and investigation."

Tucker v. Tucker, 588 So. 2d 495, 497 (Ala. Civ. App. 1991).

10

The father argues that the trial court erred by allowing the younger son to determine the father's visitation. However, the trial court merely left intact the parties' agreement as to his visitation with the younger son that was reflected in the divorce judgment, noting that that judgment included a visitation schedule.[5] The father had the burden of proof in the trial court regarding any modification of his visitation rights under the divorce judgment, and, on appeal, he must convince this court, from the record and by argument, that the evidence of a change of circumstances after the entry of the divorce judgment required the trial court to conclude that visitation should no longer be as the father had agreed. See, e.g., Sullivan v. Sullivan, 631 So. 2d 1028, 1029 (Ala. Civ. App. 1993).[6] The father's appellate brief includes no such argument,

---

[5]The trial court appears to have taken judicial notice of the divorce judgment. See McLaughlin v. Pannell Kerr Forster, 504 So. 2d 264, 266 (Ala. 1987). Unlike the trial court, however, this court is not aware of the contents of that judgment, specifically, the visitation schedule or other pertinent visitation provisions of the judgment, because the father failed to introduce that judgment as evidence or otherwise ensure that it would be included in the record.

[6]The mother testified that the father and the younger son had "personality conflicts"; that the younger son had told her that he felt unsafe "over there" with the father and the older son; and that, at the

particularly not one supported by pertinent legal authority. Instead, the father has cited two cases in which this court has taken a critical view of allowing a child to determine whether visitation occurs. See Morgan v. Morgan, 183 So. 3d 945, 965 (Ala. Civ. App. 2014); Moore v. Moore, 57 Ala. App. 735, 331 So. 2d 742 (Civ. 1976). Neither of those cases, however, involved a parent's attempt to modify a custody arrangement to which he or she had previously agreed, and we must presume that the agreed-upon custody arrangement in this case was determined to be in the best interest of the younger son by both the parties and the trial court when the divorce judgment was entered. See T.J. v. Calhoun Cnty. Dep't of Hum. Res., 116 So. 3d 1168, 1175 (Ala. Civ. App. 2013) (per curiam opinion with two Judges concurring and one Judge concurring in the result) (discussing the well-settled presumption that a parent is fit

_____

time of trial, the father had had no contact with the younger son in four months, as far as she knew. The father's testimony focused on financial issues and the custody of the older son, not his relationship with the younger son or his lack of visitation with that son. During a colloquy with the trial court, the father's counsel stated that the father's relationship with the younger son was "deteriorating." "However, statements of counsel are not evidence." Prattville Mem'l Chapel v. Parker, 10 So. 3d 546, 558 (Ala. 2008).

absent evidence supporting a contrary conclusion); see also Troxel v. Granville, 530 U.S. 57, 68 (2000) (discussing the "presumption that fit parents act in the best interests of their children"). Because the father's argument reflects an attempt to assert a legal error regarding the custody arrangement to which he had previously agreed and that was incorporated into the divorce judgment, rather than that a change of circumstances warranted a modification of the custody arrangement to which he had previously agreed, and because his argument is inadequately made as to the latter issue, we will not consider the visitation issue further. See Rule 28(a)(10), Ala. R. App. P.; Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994) ("We have unequivocally stated that it is not the function of [an appellate court] to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.").

The father next argues that the trial court failed to properly apply Rule 32, Ala. R. Jud. Admin., when calculating his child-support obligation and that he was due "current and retroactive support … for

the thirty months preceding this appeal and the final year of the [older son's] minority." As to the latter contention, the father's argument presumes that the trial court was required to treat this case as a split-custody case after the older son began residing with him. However, the divorce judgment awarded sole physical custody of the older son to the mother, and that judgment remained unmodified until the entry of the February 2023 judgment. The father makes no argument, supported by pertinent legal authority, as to how the trial court might have erred by not treating the case as one involving split custody, particularly since the father himself had characterized the eventual custody arrangement with the older son as a logical result of that son's right to extend his visitation with the father. Thus, we will not consider the retroactive-support issue. See Rule 28(a)(10), Ala. R. App. P.; Dykes, supra.

As to the issue of the application of Rule 32, Ala. R. Jud. Admin., the father notes that the trial court did not prepare and file a "Child Support Guidelines" form (Form CS-42). Pursuant to Rule 32(E), the filing of a Form CS-42 is mandatory. Generally, "this court will remand (or reverse and remand) for compliance with the rule," particularly when

14

we cannot discern how the trial court arrived at its child-support determination. Hayes v. Hayes, 949 So. 2d 150, 154 (Ala. Civ. App. 2006); see also Morgan v. Morgan, 183 So. 3d 945 (Ala. Civ. App. 2014).

Based on the record, the mother was employed as a paralegal and the father was unemployed but received disability benefits through the United States Department of Veterans Affairs and through the United States Social Security Administration. At the close of trial, the trial court requested that the parties file "Child-Support-Obligation Income Statement/Affidavit" forms (Form CS-41), which they did. The parties' respective CS-41 forms were filed on February 1, 2023, and indicated that the mother had monthly income of $4,191.66 and that the father had monthly income of $5,123. Also, the mother testified that she received, on behalf of the children, Social Security disability benefits (based on the father's disability) and that, in 2023, she was supposed to receive a total monthly Social Security disability payment of $530 -- $265 for each son. It appears that, upon the older son's attaining the age of majority, the total monthly Social Security disability payment would be made for the

benefit of the younger son. See Rule 32(B)(9) (discussing credits against a parent's child-support obligation).

The trial court did not state that it was deviating from the Rule 32 child-support guidelines or make any findings in that regard (except perhaps for purposes of the split-custody arrangement that resulted from the February 2023 judgment). After reviewing the record and Rule 32 and its appendix, we are unable to discern the basis for the trial court's determination that, "pursuant to Rule 32," the father's child-support obligation would be $557 per month after the older son reached the age of majority in April 2024, particularly in light of the credit that would be due for any Social Security disability payment relating to the youngest son. Accordingly, we reverse the February 2023 judgment insofar as it addresses child support and remand the case for the trial court to properly determine the father's monthly child-support obligation in compliance with Rule 32.

The father next argues that the trial court erred in paragraph 5 of the February 2023 judgment by ordering him to "reimburse" the mother

for "any unpaid extracurricular activities for [the younger son]."[7] According to the father, the parties had not included extracurricular expenses in the settlement agreement that was incorporated into the divorce judgment, and the mother did not request such retroactive relief in her pleadings or at trial. The father argues:

> "The retroactive application of the requirement, as stated in paragraph 5 of the [February 2023 judgment], exceeded the jurisdiction of the trial court. An order entered without jurisdiction is a nullity. See Thompson v. Jett, 318 So. 3d 1226 (Ala. Civ. App. 2020). As the issue was not properly before the trial court, and was neither plead[ed] nor argued by consent, the trial court lacked jurisdiction to entertain retroactive reimbursement related to extracurricular activities."

The father's argument is based on a false premise. In both her initial contempt petition and the amended contempt/modification

---

[7]Paragraph 5 also required the father to "reimburse [the mother] $300 for unpaid medical/dental expenses." At trial, the mother testified that the father owed her that amount for his portion of the sons' "medical bills," and the father admitted that the parties' agreement (presumably the settlement agreement that was incorporated into the divorce judgment) had addressed the payment of unpaid medical bills. The father's argument references only the reimbursement of extracurricular expenses. He makes no argument as to the medical-expense reimbursement or as to paragraph 4 of the February 2023 judgment, which required the parties to "equally divide any extracurricular or health/dental costs incurred for the children" going forward.

petition, the mother simply requested any relief to which she may be entitled. In her amended contempt/modification petition, she also requested prospective relief as to extracurricular-activity expenses, but she made no specific reference to retroactive relief as to either medical expenses or extracurricular expenses. Nevertheless, at trial, when the mother was asked what she wanted the trial court to do, she stated, without objection, that

> "[t]here's also the issue of extracurricular for our younger son. That was not in our agreement originally. I have no idea why. But we -- it was in my contempt -- I'm sorry, I think I filed an amended contempt issue or somehow it tried to add in the extracurricular. We did put that on the record, and he did agree to that. But he has not paid any extracurricular for our younger."[8]

The trial court then asked how much the mother believed the father owed "today" for the younger son's extracurricular-activity expenses, and she

---

[8]Based on the mother's testimony at trial, the extracurricular-activity-expense issue was discussed in relation to the July 2021 settlement agreement but that issue was not addressed in that settlement agreement, which was one of the reasons for her disagreement with the judgment that had been entered based on that agreement. The record on appeal does not include a transcript of the June 2022 hearing at which the July 2021 settlement agreement was discussed.

responded: "I believe just $150 right now. I would just like to be covered in the future because our [younger] son is playing an additional sport."

Based on the foregoing, the issue of the father's obligation for retroactive extracurricular-activity expenses was tried by the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P.; Alverson v. Alverson, 28 So. 3d 784, 785 (Ala. Civ. App. 2009). However, the father has not challenged the merits of the February 2023 judgment. Instead, he has treated the alleged error as a jurisdictional error, citing Thompson v. State ex rel. Jett, 318 So. 3d 1226 (Ala. Civ. App. 2020). Thompson was a civil-forfeiture case, as to which this court stated:

> "Vanessa Imelda Thompson seeks appellate review of the order of the Lawrence Circuit Court … purportedly denying her motion filed pursuant to Rule 60(b), Ala. R. Civ. P. Thompson, however, prematurely filed her notice of appeal before the entry of the order purportedly denying her Rule 60(b) motion. Because the filing of the notice of appeal divested the trial court of jurisdiction to enter the order, the appeal is not taken from an appealable order. Therefore, we have no jurisdiction over the appeal, and, thus, we dismiss the appeal."

318 So. 3d at 1227.

Thompson has no application to the issue whether a trial court has jurisdiction to award reimbursement of extracurricular-activity

19

expenses, whether tried by implied consent or otherwise. Also, although this court may consider issues of subject-matter jurisdiction ex mero motu, we have held that improperly awarding reimbursement when no prior obligation existed pursuant to a judgment or an agreement between the parties is a legal error, nor a jurisdictional error. See Shook v. Shook, [Ms. 2210161, Apr. 28, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023); A.B. v. J.B., 40 So. 3d 723, 733 (Ala. Civ. App. 2009). The father does not cite or discuss in his argument any precedent discussing that legal error, however, and we cannot make that argument for him. See Dykes, supra. The father's argument that the trial court lacked jurisdiction to make the retroactive extracurricular-activity-expense award in the present case must be rejected.

Based on the foregoing, the February 2023 judgment is affirmed except as to the determination of the father's child-support obligation. As to that determination, the February 2023 judgment is reversed and the case is remanded for the trial court to comply with Rule 32, Ala. R. Jud. Admin.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Moore, Hanson, and Fridy, JJ., concur.